directed to dismiss the appeal from the justice's court to that court.

---

## *In re* TOD.

1. On the hearing of a writ of habeas corpus in behalf of a prisoner held by extradition warrant, the court may inquire whether an offense was charged, whether the prisoner was a fugitive from justice, and whether the purported warrant was in fact issued by the governor; and it is bound to do so when these questions are properly presented.

2. Where one sought to be extradited for an offense involving fraud left the state where it was alleged to have been committed, not only with the knowledge, but at the special request, of the parties alleged to have been defrauded, he is not a fugitive from justice, within the meaning of the federal constitution and the extradition act.

3. The duty of examining extradition papers, passing on their validity, and issuing his warrant devolves on the governor personally, and the power cannot be delegated.

(Opinion filed January 18, 1900.)

Appeal from circuit court, Lawrence county. Hon JOSEPH B. MOORE, Judge.

Application of Grant Heatly Tod for a writ of habeas corpus. The application was denied, and the prisoner remanded to custody, and from an order denying a new trial he appeals. Reversed, and his discharge ordered.

The facts are stated in the opinion.

*C. E. Davis,* for appellant.

The courts have authority upon *habeas corpus* to enquire into the cause of a prisioner's detention and for this purpose,

while not having power to direct the executive discretion, they may review the manner in which it was exercised. 7 Am. & Eng, Enc. of Law 655; Robb v. Connelly; 111 U. S. 624; People v. Brady, 56 N. Y. 182; Jones v. Leonard, 50 Ia. 106; *Ex-parte* Smith. 3 McClain 121; *Ex-parte* Hart, 63 Fed. 249; Comp. Laws § 4644.

If there is no charge of crime against the prisoner in the demanding state there is no duty devolving upon the executive to surrender a citizen of the state. Lawrence v. Brady, 56 N. Y. 182; Smith v. State, 21 Neb. 552; Davis' Case, 122 Mass. 324; Matter of Manchester, 5 Cal. 237; *Ex-parte* Sheldon, 34 O. S. 319; Roberts v. Reilly, 116 U. S. 80; 7 Am. Eng. Enc. Law 638; *Ex-parte* Slauson, 73 Fed. 667; 2 Bish. Crim. Law 665; Rex v. Barnham, 1 Solk. 379; *Ex parte* Slamon, 73 Fed. 667.

The question whether a prisoner is a fugitive from justice of another state can be examined into on *habeas corpus*, 8 Enc. Pl. & Pr. 823; 12 Am. & Eng. Enc. of Law 601; Jones v. Leonard, 50 Ia. 106; *In re* Kellar, 36 Fed. 681; *In re* White, 55 Fed. 54; *In re* Cook, 49 Fed. 833; U. S. v. Fowkes, 53 Fed. 13; *Ex-parte* State, 73 Ala. 503; Hartman v. Aveline, 63 Ind. 352; *Ex-parte* Regie, 114 U. S. 642; Hartman v. Aveline, 63 Ind. 352; *In re* Doo Woon, 18 Fed. 899; *Ex-parte* Morgan, 20 Fed. 298; Patterson's Case, 18 Ala. L. J. 190.

Only the Governor can examine extradition papers and issue a warrant of arrest thereon. This power does not devolve upon his private secretary in his absence. *In re* Doo Woon, 18 Fed. 898.

*John L. Pyle*, Attorney General, for respondent.

No brief filed.

CORSON, J. On July 21, 1899 Grant Heatley Tod presented a petition to the honorable judge of the circuit court of the Eighth judicial circuit, in and for the county of Lawrence, setting forth that since the 16th day of September, 1898, he had been a resident of said Lawrence county; that he was then unlawfully restrained of his liberty by the sheriff of Lawrence county, who claimed some right to detain him; and that such detention was unlawful,—and praying that he (said petitioner) might be forthwith discharged from custody. Thereupon the said circuit judge issued a writ of *habeas corpus*, commanding the said sheriff of Lawrence county to produce before him the body of said Tod, together with the cause of his detention. The sheriff made return that he detained the petitioner under and by virtue of an extradition warrant purporting to be issued by the executive of this state; also, a warrant of arrest purporting to be issued by the said executive of this state, directed to the sheriff, coroner, or any other peace officer of Lawrence or any other county of this state; a requisition purporting to be issued by the execution of the state of Nebraska; and a warrant purporting to be issued by the county judge of York county, state of Nebraska. To this return the petitioner interposed a demurrer, which was overruled. Thereupon the petitioner filed an answer. in which he denied that he was a fugitive from justice from the state of Nebraska, and alleged "that at the time of leaving the state of Nebraska, on the 17th day of Sept-1898, your petitioner acted through the requests of the officers and agents of the York Mining & Development Company, Limited; that on or about the 15th day of May, 1899, at the request of the York Mining & Development Company, your petitioner visited the city of York, Nebraska, and while there

all accounts and business was fully and finally settled and approved by the said company; that thereafter your petitioner was specially requested to return to the state of South Dakota, as the employe of the said company, and thereupon the said company purchased and delivered to this petitioner transportation to go from the city of York, Nebraska, to the city of Deadwood, and it was in pursuance of the business of the said company, and not as a fugitive from justice from the state of Nebraska that your petitioner has returned to the state of your petitioner's residence." The petitioner further alleged, "upon information and belief, that the warrant set forth in the return of the respondent, W. I. Lancaster, the agent of the state of Nebraska, to receive and transport your petitioner to the State of Nebraska, and the warrant in said return directing the sheriff of Lawrence county, South Dakota, to arrest your petioner, were not executed by his excellency, Andrew E. Lee, governor of the state of South Dakota; that on the 18th day of July, 1899, at the time said warrants purport to be signed, the said Andrew E. Lee was at the town of Vermillion, in South Dakota, and never saw the said warrants, or either of them, nor did he upon that day see the agent of the state of Nebraska, W. I. Lancaster, or read the requisition of the executive of the state of Nebraska requiring the surrender of your petitioner as a fugitive from justice, but that each of the said warrants have been theretofore signed by the governor of the state of South Dakota in blank, and were filled out by other persons than the said governor of the state of South Dakota, and that the said papers were never read or seen by the executive after the said blanks were filled out, and before the same were delivered to W. I. Lancaster, agent of the state of Nebraska; and for the

reasons aforesaid the said warrants, and each of them, were at the time of the delivery thereof, and at all times have been, and now are, illegal and void." The answer also contained a copy of the affidavit or complaint alleged to have been made before the county judge of York county, in the state of Nebraska, upon which the requisition of the governor of the state of Nebraska was based. The circuit judge at the close of the hearing made an order remanding the petitioner to the custody of the said sheriff. A motion was made to the circuit court to vacate and set aside said order, and to grant the petitioner a new trial, which was denied; and from the order denying the same the petitioner has appealed to this court.

The counsel for the petitioner and appellant contends (1) that the affidavit or complaint upon which the requisition issued by the governor of the state of Nebraska was based does not charge an offense; (2) that there was no evidence before the governor of this state or before the court tending to show that he was a fugitive from justice; (3) that the extradition warrant purporting to be issued by the governor of this state, as well as the warrant for his arrest, never in fact having been issued by the executive of this state personally, is null and void; and, (4) if there was any proof before the executive of this state tending to show that the appellant was a fugitive from justice, that evidence was clearly overcome by the proof of the appellant on the hearing that he was not a fugitive, and that he was not a subject for extradition under the law of congress. The grounds for holding the appellant and remanding him to the custody of the sheriff of Lawrence county were not stated by the judge in his order, and hence what those grounds were are matter of conjecture. The learned circuit judge evidently

overlooked the requirement of section 7843, Comp. Laws (Habeas Corpus Act,) which provides, ''It shall be the duty of the court or judge remanding him to make out and deliver to the sheriff or other person to whose custody he shall be remanded, an order in writing stating the cause or causes of remanding him.''

The attorney general takes the position in this court that it was not competent for the circuit judge to proceed further in the examination of the case upon the writ of *habeas corpus* than to determine whether or not the extradition warrant purporting to have been issued by the executive of this state was sufficient in form, and stated the facts required to be stated in such a warrant to authorize the appellant to be held and taken to the state of Nebraska, and that it was not competent for the court to enter into an investigation as to whether or not an offense was charged, or whether or not the appellant was a fugitive from justice, or whether or not the warrant purporting to be issued by the governor was in fact issued by him. Upon the questions presented the decisions of the courts have not been in entire harmony, but we are of opinion that the weight of authority is in favor of the doctrine that all of these questions may be investigated by the court or judge authorized to issue the writ of *habeas corpus* and that it is his duty to investigate them, when properly presented, and that he is not conclusively bound by the action of the executive in issuing his extradition warrant. The law of congress providing for the extradition of fugitives from justice provides as follows: ''Whenever the executive authority of any state or territory demands any person as a fugitive from justice, of the executive authority of any state or territory to which such person

has fled, and produces a copy of an indictment found or an affi-
davit made before a magistrate of any state or territory, charg
ing the person demanded with having committed treason, fel-
lony or other crime, certified as authentic by the governor or
chief magistrate of the state or territory from which the per-
son so charged has fled, it shall be the duty of the executive
authority of the state or territory to which such person has fled
to cause him to be arrested and secured, and to cause notice of
the arrest to be given to the executive authority making such
demand, or to the agent of such authority appointed to receive
the fugitive, and to cause the fugitive to be delivered to such
agent when he shall appear. If no such agent appears within
six months from the time of the arrest, the prisoner may be
discharged. All the costs or expenses incurred in the appre-
hending, securing and transmitting such fugitive to the state
or territory making such demand, shall be paid by such state
or territory." Section 5278, Rev. St. U. S. Under the pro-
visions of this section the party sought to be extradited must
be charged with the commission of a crime, and be a fugitive
from justice, to authorize the executive of the state upon whom
the demand is made to issue his warrant. In Roberts v. Reilly,
116 U. S. 80, 6 Sup. Ct. 291, 29 L. Ed. 544, the supreme court
of the United States says: "It must appear, therefore, to the
governor of the state to whom such a demand is presented, be-
fore he can lawfully comply with it: First, that the person de
manded is substantially charged with a crime against the laws
of the state from whose justice he is alleged to have fled, by an
indictment or an affidavit certified as authentic by the governor
of the state making the demand; and, second, that the person
demanded is a fugitive from the justice of the state, the execu-

tive authority of which makes the demand.    The first of these prerequisites is a question of law, and is always open upon the face of the papers to judicial inquiry, on an application for a discharge under a writ of *habeas corpus*.    The second is a question of fact, which the governor of the state upon whom the demand is made must decide, upon such evidence as he may deem satisfactory.    How far his decision may be reviewed judicially in proceedings in *habeas corpus*, or whether it is not conclusive, are questions not settled by harmonious judicial decisions, nor by any authoritative judgment of this court.    It is conceded that the determination of the fact by the executive of the state in issuing his warrant of arrest, upon a demand made on that ground, whether the writ contains a recital of an express finding to that effect or not, must be regarded as sufficient to justify the removal until the presumption in its favor is overthrown by contrary proof."    Ex parte Reggel, 114 U. S. 642, 5 Sup. Ct. 1148, 29 L. Ed. 250, 12 Am. & Eng. Enc. Law (2d Ed.) p. 601; 8 Enc. Pl. & Prac. p. 823.    It must also be affirmatively shown that he is a fugitive from justice, and such fact should be recited in the extradition warrant.    In the warrant issued in this case the only recital upon this subject is that the "said Grant H. Tod, alleged to be within the jurisdiction of this state, is a fugitive from the justice of the state of Nebraska."    Undoubtedly the warrant of the governor would be *prima facie* sufficient to prove that all the necessary prerequisites of the statute have been complied with prior to its issue by him, but this *prima facie* case may be overcome by competent evidence on the part of the person sought to be held upon the *habeas corpus* proceeding.    Upon this question, the supreme court, in Roberts v. Reilly, *supra*, says:    "To be a

fugitive from justice, in the sense of the act of congress regulating the subject under consideration, it is not necessary that the party charged should have left the state in which the crime is alleged to have been committed, after an indictment found, or for the purpose of avoiding a prosecution anticipated or begun, but simply that, having within a state committed that which by its laws constitutes a crime, when he is sought to be subjected to its criminal process, to answer for his offense, he has left its jurisdiction, and is found within the territory of another."

The affidavit in this case or the so-called complaint, made against the appellant in the State of Nebraska, is apparently insufficient to warrant the holding of the appellant, and his extradition to the State of Nebraska. The affidavit or complaint is exceedingly lengthy, and no useful purpose would be subserved by reproducing it in this opinion. The authorities are quite harmonious in holding that the affidavit, indictment or information upon which the party is sought to be held must charge a public offense; and, as we have seen, this is a question of law for the judge or court to determine upon the *habeas corpus* proceeding. In this case the complaint or affidavit is entitled as follows: "In the District Court of York County, Nebraska. State of Nebraska, Plaintiff, v. Grant H. Tod, Defendant. Complaint. State of Nebraska, York County—ss." And it proceeds: "This complaint of H. C. Page, made before me, M. M. Wildman, county judge of said county, who, being first duly sworn, deposes and says that Grant H. Tod on or about the 15th day of September, 1898, in the county of York, state of Nebraska, intending unlawfully to cheat and defraud the York Mining & Development Company, Limited, did then

and there falsely, knowingly, designedly and unlawfully pretend," etc. The affidavit or complaint then proceeded to set out certain pretenses by which the company was induced to enter into a contract with him in regard to certain mining operations in South Dakota and concludes as follows: "Subscribed and sworn to before M. M. Wildman, County Judge. Filed July 14 1899, M. M. Wildman, county judge." It was also shown on the hearing that by the laws of the state of Nebraska the county court and the district court are different courts of record, and a judge of one of said courts does not exercise the functions of a judge of the other, or interchangeably. It was further shown that informations in that state must be prosecuted by the prosecuting attorney. It will thus be seen that the proceeding is a very irregular one, and apparently not authorized by the laws of the state of Nebraska. But in addition to this irregularity, which would probably vitiate the whole proceeding, the so-called complaint itself would seem to be insufficient, in that it states no public offense. But, in the view we take of the case, it is not necessary to discuss this question at this time.

On the hearing of the *habeas corpus* proceeding it was clearly shown by the appellant that he came to this state at the request of the said mining company, and in May, 1899, he returned to Nebraska at their request, and had a final settlement with the company, and again returned to this state, upon the special request of the said company. Certainly under these circumstances the appellant could not be regarded as a fugitive from justice. Leaving that state, and coming to this state upon the request of the party alleged to have been defrauded, remaining here a number of months in its employ, re-

turning to that state for the purpose of a settlement, and again coming back to this state, not only with the knowledge but at the special request of the said company, negatives the alleged fact that he is a fugitive from justice. While it may not be necessary, to make a person a fugitive from justice, that he should leave the state where the offense is alleged to have been committed, with the intention or for the purpose of avoiding a prosecution, still we think it must appear that he left the state without the knowledge or consent, actual or implied, of the parties alleged to have been defrauded. Liberal as the rule laid down by the supreme court of the United States is, in holding parties to be fugitives from justice, the appellant would not come within that rule.

It was also shown on the hearing that the warrant purporting to be signed by the executive of this state was never in fact issued by him, but was issued by some person other than the governor. The duty of examining requisition papers, passing upon their validity, and issuing his warrant, devolves upon the governor personally. It is a power that cannot be delegated to any other person. The liberty of the citizen is involved, and he can only be restrained of that liberty by the personal act of the governor, upon whom the power has been conferred by the constitution and laws of the United States, and the constitution and the laws of this state. The execution of the power requires careful examination of the requisition papers, and involves the exercise of a sound judgment, aided, in case of necessity, by the advice of the attorney general of the state. The liberty of the citizen would be in great danger if any person could be allowed to issue such extradition warrants in the absence of the governor.

We are clearly of the opinion that the circuit judge erred in remanding the appellant to the custody of the sheriff of Lawrence county, and that the circuit court erred in not vacating and setting aside the order made by the circuit judge. The order of the circuit court is reversed, and that court is directed to enter an order discharging the appellant from custody.