# IN THE MATTER OF THE APPLICATION OF SAMUEL GALBREATH FOR A WRIT OF HABEAS CORPUS.

### (139 N. W. 1050.)

**Fugitive from justice — Federal Constitution — statutes — criminal process — jurisdiction.**

1. To be a fugitive from justice within the meaning of § 2, art. 4 of the Federal Constitution, and of §§ 5278 and 5279 of the Revised Statutes of the United States, and § 10293, of the Revised Codes of North Dakota for 1905, it is not necessary that the person charged should have left the state in which the crime is alleged to have been committed after an indictment found, or for the purpose of avoiding prosecution anticipated or begun, but simply that within another state he committed that which, by its laws, constitutes a crime, and, when he is sought to be subjected to its criminal process for his offense, he has left its jurisdiction and is found within the territory of another state.

**Habeas corpus — fugitive from justice — acquiescence — extradition.**

2. Where, therefore, on an application for release under a writ of habeas corpus, the petitioner, who was charged with obtaining money under false pretenses by obtaining an indorsement upon, and the cashing of, a check drawn without funds to meet it, showed that he came to North Dakota after having had various conversations with the complaining witness, at the last of which he told the latter that "the quickest and best way for him to raise the money was for him, the petitioner, to go to Enderlin, North Dakota, where he was positive he could obtain it," and that the complaining witness said, "All right," such implied consent or acquiescence on the part of the complaining witness did not prevent him from being a fugitive from justice within the meaning of the acts and constitutional provision in question, and from being subject to extradition from the state of North Dakota.

**Criminal offense — offense against state.**

3. A criminal offense is an offense against the sovereign state, and not against the complaining witness. Acquiescence of the complaining witness, therefore, cannot in any manner be construed into an acquiescence or consent on the part of the state.

### Opinion filed February 18, 1913.

Note.—In harmony with the decision in Re GALBREATH, the weight of authority, as shown by a review of the cases in a note in 28 L.R.A. 289, is to the effect that the reason why one who has committed a crime leaves the state where the crime was committed is immaterial in determining whether or not he is a fugitive from justice, the mere fact of leaving the state after the commission of the crime being sufficient.

Original application for a writ of habeas corpus.
Writ denied.

This is an application for release under a writ of habeas corpus.
The petition alleges that one Samuel Galbreath, the petitioner, is un-
lawfully imprisoned, detained, confined, and restrained of his liberty
by Frank Barnes, sheriff of Burleigh county; that on the 13th day of
February, 1913, he was arrested as a fugitive from justice, within the
state of North Dakota, by virtue of a warrant issued by the governor
of the state of North Dakota, upon requisition by the governor of the
state of Minnesota, and that such arrest, confinement, imprisonment,
and detention was unlawful in that no proper warrant had been
issued by the governor of the state of North Dakota. The crime charged
was that of obtaining money under false pretenses in the state of Minne-
sota, by obtaining an indorsement upon, and the cashing of, a check
drawn without funds to meet it, upon a bank in North Dakota.

C. G. Bangert, Enderlin, North Dakota, for petitioner.
H. R. Berndt, States Attorney, Bismarck, North Dakota, and Erland
Lind, Minneapolis, Minnesota, for respondent.

BRUCE, J. (after stating the facts as above). The petitioner con-
tends in this case that he is not a fugitive from justice within the
terms and meaning of § 2, art 4, of the Federal Constitution, and of §§
5278 and 5279 of the Revised Statutes of the United States, and of
§ 10293, Rev. Codes 1905, of North Dakota. Upon the examination
he sought to prove that, after the check in question went to protest,
he had several conversations on different days with the complaining
witness, during the last of which he told the latter that the quickest
and best way to raise the money was for him, the petitioner, to go to
Enderlin, North Dakota, where he was positive he could obtain it,
and that the complaining witness said "All right;" that he left Minne-
sota at 11 o'clock that night and came to North Dakota; that he left
Minnesota on the 24th of January, and arrived at Enderlin, North
Dakota, on the 25th; that his brother, from whom he hoped to get the
money, lived 7 miles out of Enderlin, and that upon his arrival he called
him up by telephone, but was informed that he was not at home; that he

did not make any further inquiry until about two weeks afterwards, when he was informed by the constable at Enderlin that he was wanted in Minneapolis, and on the following morning a deputy sheriff from Minneapolis came to take him back to Minnesota. He says that up to that time he made no effort to return the money, but that after his arrest by the deputy he had a conversation with the county attorney, and offered to pay the money, and that at the time of the application, he had the money with which to pay the demand, having raised it after his arrest, and four or five days before the hearing. He also testified that prior thereto, and on the next day after his arrival in North Dakota, he wrote to the complaining witness and told him that his brother was not at home; and that he was waiting and would see him as soon as possible and raise the money; that his brother did not get back to Enderlin until Saturday, a week before the hearing, and that during this time he received no word from the complaining witness in Minnesota. He claims, in short, that he came to North Dakota with the consent of the complaining witness, and in order to raise the money, and not for the purpose of fleeing from justice, and that in order to come within the statutes he must be proved to have actually fled from the state of Minnesota for the purpose of avoiding arrest and punishment.

We are fully satisfied that the petitioner is mistaken in his view of the law, and that a careful perusal of the authorities and of the history of the adoption and construction of the constitutional provision, and of the act of Congress, will show that to be a fugitive from justice within the meaning of the act of Congress, it is not necessary that the person charged should have left the state in which the crime is alleged to have been committed, after an indictment found, or for the purpose of avoiding prosecution, anticipated or begun, but simply that within another state he committed that which, by its laws, constitutes a crime, and when he is sought to be subjected to its criminal process for his offense he has left its jurisdiction and is found within the territory of another state. Roberts v. Reilly, 116 U. S. 97, 29 L. ed. 549, 6 Sup. Ct. Rep. 291; Ex parte Brown, 28 Fed. 653; Re Keller, 36 Fed. 681; Re White, 5 C. C. A. 29, 14 U. S. App. 87, 55 Fed. 54; State ex rel. Burner v. Richter, 37 Minn. 436, 35 N. W. 9.

A perusal of the cases, indeed, and of Mr. Moore's admirable dis-

cussion of the subject in chap. 4, of his work on Extradition, will show that this has been the practically uniform construction of the statute and of the constitutional provision from the earliest times. It is the theory followed in practically all of the treaties of the United States, and is the theory of practically all of the decisions. Counsel for petitioner, it is true, cites us to § 569 of Moore on Extradition, in which reference is made to a case where the governor of South Carolina demanded the surrender, from the District of Columbia, of John J. Patterson, a United States Senator from the former state, and in which Senator Patterson was released on a writ of habeas corpus. That case, however, if authority at all, is not authority in the case at bar. The Senator had been sent to Washington, not by the complaining witness or by any private individual, but by the sovereign state of South Carolina, itself, as its representative in Congress. We must remember that a criminal offense is an offense against the sovereign state, and not against an individual; and that no individual, not even the complaining witness, has the power or authority to control the action of his sovereign, whose dignity alone is sought to be vindicated. It may be that when the sovereign state sends an alleged criminal out of its borders, it is precluded from treating him as a fugitive from justice, but the reasoning does not apply where a private individual is the only one whose consent is pretended to have been obtained. We realize that our holding may be opposed in principle to that of our sister state in the case of Re Todd, 12 S. D. 386, 47 L.R.A. 566, 76 Am. St. Rep. 616, 81 N. W. 637, 12 Am. Crim. Rep. 303, and with Spear on Extradition, 3d ed. 381, but we are satisfied that it is sustained by the overwhelming weight of authority.

The writ is denied.

BURKE, J., being disqualified did not participate.