THOMPSON *v.* ADDISON FLOURING MILL CO.

1. WATERS AND WATERCOURSES—WATER RIGHTS—PARTIES.
   In a chancery proceeding to compel a mill company to maintain a low water level, where other proprietors of riparian rights interested in the water level being maintained at a lower point were not parties, the court could not by its decree foreclose their rights.

2. SAME.
   *Held,* on review of all the evidence in said cause, that a decree which established defendant's prescriptive right to raise the waters of the lake above a fixed point on the sill of the flume was not justified, and complainants' bill should be dismissed.

Appeal from Lenawee; O'Mealey, J. Submitted June 22, 1916. (Docket No. 94.) Decided September 26, 1916.

Bill by Gamaliel I. Thompson and others against the Addison Flouring Mill Company to restrain the lowering of the waters in Devils Lake. From a decree for defendant, complainants appeal. Decree entered dismissing the bill.

*John A. Riley* and *Fellows & Chandler,* for complainants.

*Baldwin, Alexander & Russell,* for defendant.

Plaintiffs in this action are all owners of property bordering Devils Lake, which is a small inland lake in Lenawee county. These plaintiffs have erected cottages upon their property which they occupy during the summer months, and many own launches and smaller boats, and have built docks and boathouses for their convenience.

Defendant, the Addison Flouring Mill Company, owns and operates a mill in the village of Addison. This mill is situated on the bank of Bean creek, or Tiffin river, which is the outlet of Devils Lake. A flume was put in at the natural outlet of Devils Lake about 1848. It is 4 feet wide, and the gate is about 40 inches high. Since 1848 the defendant company has used this flume by right of prescription and through grant. Defendant acquired this mill property from Azariel Smith and wife in 1906, together with rights in a certain contract which said Smith had made with the village of Addison to furnish power for an electric light plant in the village.

It is claimed by plaintiffs that said Smith dredged out and lowered Bean creek, or Tiffin river, from the outlet at Devils Lake to a depth of 3 feet for the purpose of securing power for the lighting plant in Addison, thereby allowing a greater quantity of water to pass through the outlet. Plaintiffs further claim that previous to the summer of 1910 the gates at the head of the flume were never raised sufficiently to permit the water of Devils Lake to run out to a much lower level than they would by nature, but that in 1910 the gates were raised, and the water was allowed to run through the channel to such an extent that the lake in front of the cottages of the plaintiffs was lowered about a foot and a half, so that they could not use their launches, making their docks and boathouses useless, and leaving great stretches of dry lake bottom in front of their cottages. Plaintiffs further claim that defendant has acquired the right by prescription to flood plaintiffs' land to an artificial highwater mark, claimed to be 40 to 42 inches above the bottom of the flume in the ordinary year, and to withdraw water to an artificial ordinary low-water point about 20 inches above the bottom of the flume, which plaintiffs claim defendant had previously maintained.

Defendant denies that the bed of Bean creek was ever dug lower than the bottom of the flume, stating that it was its custom to clean out the muck and weeds from the channel between the flume and the lake every few years, but that it had never believed it had a right to lower this channel, and had never attempted to do so.

Defendant denies that an artificial low-water mark was ever established or maintained, claiming that it has always lowered and raised the flume gate to suit its requirements as regards water supply at the mill, and that practically every year in the late summer and fall the gate has been raised entirely above the water, allowing the water to pass freely through the flume, thus taking its natural course; and defendant further claims that it has not used any more water since furnishing power for the electric plant than previously, as it has always used all the water it could possibly get during the dry seasons for over 40 years, and if it could have got any more it would not have installed an auxiliary steam plant at its mill. Defendant produced evidence tending to show that the summer of 1910 was an exceptionally dry one, and that the lake became low, not by reason of anything done by defendant, but by reason of evaporation, slight rainfall, etc. Defendant claims that it has no intention of varying or changing the riparian rights of the plaintiffs, but simply intends to use and exercise the rights of the flume as it has in the past, taking the seasons into consideration, and that it is entitled to do so by prescription and by deed.

It was held in the court below that the allegations in the plaintiffs' bill of complaint were not sustained by proof and the bill was dismissed.

BROOKE, J. (*after stating the facts*). A careful perusal of the very voluminous record in this cause con-

vinces us that the following facts are established by an overwhelming preponderance of the proofs:

(1) The defendant has not lowered the channel through which the water of Devils Lake entered the flume maintained by defendant in such manner as to cause the waters of the lake to flow therefrom to a greater degree than they would have flowed in a state of nature.

(2) The sill of the flume through which the excess waters of Devils Lake must flow has been maintained at its present level for upwards of 40 years.

(3) Defendant has acquired by prescription the right to impound the waters of Devils Lake by the insertion of flashboards or a gate in said flume.

(4) For a period of upwards of 40 years defendant and its predecessors in title have claimed and exercised the right to draw the impounded waters from said lake as they were required for the purpose of producing power.

(5) In seasons of low water this right has been consistently exercised to the extent that defendant and its predecessors in title would remove all the flashboards or lift the gate so that the water flowed without restraint over the sill.

(6) In one, possibly two, exceptionally arid seasons, either by reason of diminished precipitation or excessive evaporation, the level of the lake has been lowered to a point where no water flowed over the sill of the flume. To afford power during periods of extraordinary low water, defendant's predecessors in title installed an auxiliary steam plant which has been operated as occasion required for many years.

(7) Lower riparian owners have acquired a prescriptive right to the continued use and flowage of the waters of Devils Lake unimpeded by a permanent barrier above the sill of the flume.

(8) During the year 1910 and the first half of 1911 the amount of precipitation was 17 inches below normal. Plaintiffs complained of the low state of the water during this period. The condition should be ascribed rather to decreased rainfall than to excessive use of the water by defendant, who in those years manipulated the gate in the flume in the same manner as it had been manipulated through a long series of years.

(9) The claim of plaintiffs that an artificial low level at a point between 17 and 23 inches above the sill of the flume has been maintained by the defendant and its predecessors in title, and that plaintiffs have acquired a prescriptive right to have the water maintained at such level, is not sustained by the proofs in the case.

The record discloses that, while the plaintiffs are interested in maintaining a high level of the waters of Devils Lake, farmers in its vicinity are equally interested each season in an early lowering of said level in order that the lands affected may be rendered fit for husbandry. Parties so interested in the lowering of the waters of the lake, and from a perusal of the record there appear to be many of them, are not parties to this record, and their rights, whatever they may be, should not be concluded by any decree herein. Inasmuch, therefore, as plaintiffs' contention involves only the right of defendant to lower the lake to the point of taking all the water therein that will flow over the sill of the flume, and as plaintiffs' proofs failed to show them to be entitled to the relief prayed, we agree with the decree of the court below in dismissing the bill of complaint. We disagree with that portion of the decree which establishes in defendant a prescriptive right to raise the waters of the lake to a certain fixed point above the sill of the flume. We reach this conclusion not because defendant may not be entitled

to such a prescriptive right, but because the question whether it was so entitled was not properly an issue in the case, and the rights of the interested persons not parties to the record should not be foreclosed by such a decree.

In this court a decree will be entered simply dismissing plaintiffs' bill, with costs.

STONE, C. J., and KUHN, OSTRANDER, MOORE, STEERE, and PERSON, JJ., concurred. BIRD, J., did not sit.