[No. 3354.   April 13, 1928.]

Ex parte NABORS.

[267 Pac. 58.]

T. J. Mabry, of Albuquerque, for petitioner.

Fred J. Nicholas, Dist. Atty., of Magdalena, Antonio A. Sedillo, Dist. Atty., of Albuquerque, for respondent.

OPINION OF THE COURT

WATSON, J. Upon the petition of William J. Nabors we issued a writ of habeas corpus to test the legality of his restraint by the sheriff of Valencia county, by whom the petitioner was held under an extradition warrant issued by Governor Dillon of this state, upon requisition of the Governor of California; said warrant reciting that petitioner "stands charged with the crime of assault with intent to commit murder, committed in the county of Los Angeles in the year 1923 in said state, and that said William Nabors is a fugitive from justice and has taken refuge in this state."

We shall first dispose of a question raised by respondent as to the propriety of our issuance of this writ. A former application had been previously made, which we denied upon the ground that petitioner was restrained in Valencia county in the Seventh judicial district, and that there was no showing that the judge of said district was not in a position to entertain such application, nor any other controlling reason impelling us to entertain the application. Thereafter petitioner applied to the judge of said district, obtained the writ, and upon hearing was remanded. It is contended that in a case of this kind, where no changed conditions can be urged, such remanding order should be deemed by us res adjudicata.

It is said in 29 C. J. "Habeas Corpus," § 203:

"By the great weight of authority, the rule is, in the absence of a statute providing otherwise, that refusal to grant a writ of habeas corpus or a dismissal of the writ, or a remand of the relator to custody, or other refusal to discharge him, is not a bar to, or res judicata on, a subsequent application for writ."

Numerous authorities are cited as supporting this rule. Some of the cases dealt with insane persons and children.

Such cases are not necessarily in point, since changed conditions may warrant a second application. Many of the decisions, however, are directly in point. We consider that, as a practical matter, we are committed to this doctrine by Notestine v. Rogers, 18 N. M. 462, 138 P. 207, and by legislation occurring immediately thereafter. The question in that case was whether an order discharging a petitioner was appealable. The decision itself, of course, goes no further; but it points out wherein an appeal from such an order, under the appellate practice then obtaining, would greatly impair the speedy remedy which habeas corpus is designed to afford one restrained of his liberty, and points out also that such a person himself needed no appeal, because he could "exhaust the whole judicial power of the territory, by repeated applications, until he secured his release." Immediately thereafter the Legislature amended the Appellate Procedure Act, providing for an appeal from an order discharging one from custody, but failing to provide for an appeal from an order remanding him. Laws 1915, c. 77, § 1. It would be a one-sided system unless we hold that the right of appeal from the order of discharge is offset by the right of one remanded to custody to apply to another judge having jurisdiction.

The jurisdiction of this court and of its members to issue writs of habeas corpus on the petition of one held in custody is given by section 3 of article 6 of the Constitution. That jurisdiction is, of course, state wide. The jurisdiction of the district court and the judges thereof is given by section 13 of article 6. The jurisdiction being concurrent, we think that, in the first instance, in the absence of a showing of controlling necessity, we properly relegated petitioner to his remedy in the district court of the county where he was restrained. To what extent, if any, the decision of that court should have influence, it is not necessary now to consider; but we hold that it is not res adjudicata.

This brings us to the merits of this case. The facts are not in dispute. From the documents presented to the Governor, it appears that petitioner had been convicted upon his plea of guilty of the crime mentioned in

the warrant. After serving some time in the penitentiary, he had been granted a parole, by the conditions of which, accepted by him in writing, he was to proceed directly to his place of employment at San Ysidro, N. M., to report to one Sandoval, his employer, and who, it appears, was his father-in-law, and there to remain until he might receive permission to go elsewhere; that, should he desire to change his employment or residence, or to leave the county in which employed (Sandoval), he must first obtain the written consent of the parole officer; that while on parole, and until the expiration of sentence, he should continue to be in the legal custody and control of said board of prison directors, and that, if he should fail to live up to the requirements of the board or of the parole officer, he should be returned to prison, and that he should make written report to the parole officer on the 1st day of each month. Pursuant to the conditions of this parole, petitioner, on the very day of his release, departed for, and came directly to, San Ysidro, N. M. After some time the prison board saw fit to revoke this parole; the assigned causes being that, without permission of the board, petitioner had left his employment in Sandoval county and had gone to Bernalillo county, and also to Santa Fe county, and that he had had certain firearms in his possession in New Mexico which, while not contrary to any express provision of his parole, is said to be contrary to a statute of California.

Petitioner's contentions are that all charges upon which the state of California now seeks to deal with him relate to his conduct and acts in New Mexico, and that, even if such charges render him amenable to any punishment in California, or to the revocation of his parole, the admitted facts that they were not committed in that state, and that he did not leave that state after their commission, are conclusive against the contention that he is a fugitive from the justice of California.

The underlying law controlling us in determining the authority of the Governor to honor the requisition of a Governor of a sister state, and of the demanded person to resist extradition, is found in section 2 of article 4 of the

Constitution of the United States, relating to interstate extradition, and in Revised Statutes, § 5278, 18 USCA § 662, enacted in furtherance of the constitutional provision, and in the decisions of the United States Supreme Court thereunder. It is the established rule that upon habeas corpus the demanded person may question, first, whether the record presented to the Governor constitutes a substantial accusation of crime; and, second, whether the person demanded is a fugitive. The first is a question of law to be decided upon the record. The second is one of fact, of which the Governor's warrant is prima facie proof, and not to be disturbed on conflicting evidence. But where, upon admitted or undisputed facts, it appears that the demanded person is not a fugitive, he is entitled to be discharged. The doctrine of constructive presence, which in some cases is sufficient to support the indictment and conviction of one not actually present, is not sufficient under the extradiction requirement that the person demanded must be a fugitive from justice. He must have been personally present in the demanding state, at least during some stage of the crime. The foregoing principles we believe to be firmly established by decisions of the United States Supreme Court. In re Reggel, 114 U. S. 642, 5 S. Ct. 1148, 29 L. Ed. 250; Roberts v. Reilly, 116 U. S. 80, 6 S. Ct. 291, 29 L. Ed. 544; Lascelles v. Georgia, 148 U. S. 537, 13 S. Ct. 687, 37 L. Ed. 549; Hyatt v. People ex rel. Corkran, 188 U. S. 691, 23 S. Ct. 456, 47 L. Ed. 657; Munsey v. Clough, 196 U. S. 364, 25 S. Ct. 282, 49 L. Ed. 515; People ex rel. McNichols v. Pease, 207 U. S. 100, 28 S. Ct. 58, 52 L. Ed. 121; Strassheim v. Daily, 221 U. S. 280, 31 S. Ct. 558, 55 L. Ed. 735; Innes v. Tobin, 240 U. S. 127, 36 S. Ct. 290, 60 L. Ed. 562; Hogan v. O'Neill, 255 U. S. 52, 41 S. Ct. 222, 65 L. Ed. 497.

In determining the two questions before us, it is important to avoid confusion as to the crime charged against petitioner for which California desires to exact punishment. Petitioner contends as if the charged offenses were the matters stated as the occasion and reason for the revocation of his parole. If we regard the accusation as involving merely the leaving of Sandoval county, or the

having of firearms in his possession, it would be difficult to hold, either that there was a substantial charge of any offense under the laws of California, or that petitioner is a fugitive from the justice of that state. Such is not, however, the correct view to take of the charge. The accusation is founded upon the felony of which he stands convicted. For this his punishment is not complete. For this California demands his extradiction. There is abundant and well-reasoned authority that this is the correct view in a case where one whose parole has been revoked contends that he is not a fugitive. Perhaps the leading case is Drinkall v. Spiegel, 68 Conn. 441, 36 A. 830, 36 L. R. A. 486, where the doctrine is developed that one who is allowed to go at large upon parole becomes, upon the revocation of his ticket of leave, in legal effect, an escaped convict, and may, if found outside the state, be extradited, not necessarily for the escape, nor for the violation of parole, but for the original crime which he has not fully expiated. See, also, In re Gertz, 21 Hawaii, 526; Albright v. Clinger, 290 Mo. 83, 234 S. W. 57, Hughes v. Pilanz (C. C. A.) 138 F. 980; Ex parte Carroll, 86 Tex. Cr. R. 301, 217 S. W. 382, 8 A. L. R. 901; In re Hope (Ex. Ch.) 10 N. Y. S. 28.

Under this doctrine we are clearly required to hold that the Governor had before him a substantial charge of crime committed in the state of California. The doctrine serves, also, to narrow the question whether petitioner is a fugitive) to this single point: Does the fact that petitioner left California, not in violation of, but pursuant to, his parole, defeat California's right to his rendition as a fugitive? The peculiar, fact distinguishing the case at bar from those cited is that under the condition of this parole petitioner was required to "flee" from California, and could only have remained there in violation of his parole .

Under some of the earlier decisions, the words of the Constitution, "flee from justice," were thought to carry an implication of a voluntary and conscious attempt by leaving the state to escape an apprehended prosecution; but such is no longer the accepted doctrine. In Ex parte Reg-

gel, 114 U. S. 642, 5 S. Ct. 1148, 29 L. Ed. 250, it was held that, if the person demanded had committed a crime in the demanding state, and when sought to answer for it had left that state and was found in another, he was a fugitive. In Appleyard v. Mass., 203 U. S. 222, 27 S. Ct. 122, 51 L. Ed. 161, 7 Ann. Cas. 1073, it was said that one was a fugitive who left the state after commission of a crime, "no matter for what purpose or with what motive, nor under what belief." In McNichols v. Pease, 207 U. S. 100, 28 S. Ct. 58, 52 L. Ed. 121, it was held that leaving the state "in whatever way or for whatever reason" constituted one a fugitive. In Drew v. Thaw, 235 U. S. 432, 35 S. Ct. 137, 59 L. Ed. 302, it was said, "It does not matter what motive induced the departure." It is immaterial that the departure was with the consent of the complaining or prosecuting witness. Leonard v. Zweifel, 171 Iowa, 522, 151 N. W. 1054; Matter of Galbreath, 24 N. D. 582, 139 N. W. 1050. It is immaterial that the leaving was with the knowledge or without objection of the prosecuting authorities. Bassing v. Cady, 208 U. S. 386, 28 S. Ct. 392, 52 L. Ed. 540, 13 Ann. Cas. 905. In Van Walden v. Geddes, 105 Conn. 374, 135 A. 396, it was held that one who was in Connecticut pursuant to parole from confinement in California should be surrendered on the requisition of Michigan, though the latter state had knowledge of and consented to the purpose of California so to parole him.

If the expressions above quoted are to be given full effect, they would determine petitioner's case. He has left the state in which he stands convicted of felony, is absent therefrom when wanted to answer for his offense, and is found in this state. The cases above cited do not include one like this, but, in our judgment, the principles there established are applicable here. The tendency of decision is plain, and, if it were to be held that one who departs involuntarily or constructively in custody of the law is not a fugitive, such a holding would, in our judgment, constitute a check in that tendency, if not a departure from established principles. Moreover, it may be questioned whether petitioner's departure is properly termed "involuntary." He made application for this pa-

role, and made request that he be allowed to come to· New Mexico to be in the charge of his father-in-law.

The policy of the Supreme Court of the United States in construing the constitutional and statutory provisions in question has been consciously and admittedly liberal toward interstate extradition. It is explained· and justified by the origin and purposes of those provisions. After adverting to this fact in Biddinger v. Commissioner of Police, 245 U. S. 128, 38 S. Ct. 41, 62 L. Ed. 193, Mr. Justice Clarke, speaking for the court, strikingly presents another important consideration in this language:

"Courts have been free to give this meaning to the Constitution and statutes because in delivering up an accused person to the authorities of a sister state they are not sending him for trial to an alien jurisdiction, with laws which our standards might condemn, but are simply returning him to be tried, still under the protection of the Federal Constitution but in the manner, provided by' the state against the laws of which it is charged that he has offended."

There is little, if any, authority that can be said to be directly in point. Respondent places reliance on Ex parte Williams, 10 Okl. Cr. 344, 136 P. 597, 51 L. R. A. (N. S.) 668. We have been unable to gather, however, from the statement of facts, that the Oklahoma court had before it a parallel case. The case most nearly in point is People ex rel. Hutchings v. Mallon, decided at a Special Term of the New York Supreme Court, and reported 126 Misc. Rep. 591, 214 N. Y. S. 211, and reversed on appeal to the Appellate Division, reported 218 App. Div. 461, 218 N. Y. S. 432; the latter decision being affirmed by the Court of Appeals, reported 245 N. Y. 521, 157 N. E. 842.

The decision of the Special Term was entirely favorable to petitioner's present condition. It was held that the distinction between "voluntary departing" and "leaving in custody of the law" was controlling, and that Hutchings departed "under escort of California" and neither "fled" nor "left." So it was held he was not a fugitive. The Appellate Division reversed the decision, thus stating the question we are now concerned with:

"Can the relator be deemed a fugitive from justice, when he originally left the state of California with the consent of the

proper authorities, under parole, and his return thereto is demanded, when his parole has been lawfully revoked?"

This question was affirmatively answered. Many of the above-mentioned cases were cited, and In re Whittington, 34 Cal. App. 344, 167 P. 407, upon which the Special Term relied, and upon which petitioner places great reliance here, was disapproved. The affirmance of this decision by the Court of Appeals was without opinion.

In the Hutchings Case, the claim was made on behalf of California that the parole was granted originally as a result of fraud on Hutchings' part in suppressing facts as to his former criminal record, etc. Petitioner seeks to distinguish the case in that respect. The fact is mentioned in the opinion of the Appellate Division, but only as one to be noted additionally. It does not seem to have been considered decisive. It appears to have been clearly laid down that the voluntary or involuntary character of Hutchings' leaving, and that he left in custody of the law, are immaterial facts. The presence of fraud in obtaining the parole would make but one difference; namely, that the conduct for which the parole was revoked was prior to the "flight." But, having accepted the doctrine as the New York court did, and as we do, that it is the original crime and not the violation of parole for which extradition was demanded, it would seem to be immaterial what misconduct has led to the revocation of the parole, or when it occurred.

The Uniform Criminal Extradition Act, approved by the National Conference of Commissioners on Uniform State Laws, in July, 1926, was in 1927 adopted by Idaho, Utah, Pennsylvania, and New Mexico. See Laws 1927, c. 118. By section 5 it provides:

"A warrant of extradition must not be issued unless the documents presented by the executive authority making the demand show that the accused was present in the demanding state at the time of the commission of the alleged crime, and that he thereafter fled from that state, and is now in this state, and that he is lawfully charged by indictment found or by an information filed by a prosecuting officer and supported by affidavit to the facts, or by affidavit made before a magistrate in that state, with having committed a crime under the laws of that state, or that he has been convicted of crime in that state and has escaped from confinement or broken his parole."

The language "* * * that he has been convicted of crime * * * and has * * * broken his parole" has occasioned some argument. On the one hand it is contended that the charge of having broken a parole will subject one to requisition, though such might not have been true before the passage of the act. On the other hand, it is suggested that, since the commissioners who drafted the statute had particularly in mind as to violation of parol the case of Hughes v. Pflanz (C. C. A.) 138 F. 980 (see 9 Uniform Laws Ann. 1927 Supp. 37), it is not to be supposed that the provision was intended to apply further than in that case, where the violation occurred prior to "flight," and leaving the state was in violation of the parole.

As this act is so recent in the few states which have as yet adopted it, we are not surprised that no decisions under it have been cited. In our judgment, however, it has no bearing upon the question before us. In these uniform acts we do not usually look for novelty. The main consideration is to achieve uniformity of rule and procedure. To that end much that rests in the decisions of the courts is reduced to Code form, and, where decisions are inharmonious, the commissioners endeavor to reconcile them, or to select the better. Under authorities cited supra, the right of any state to legislate upon the subject of interstate extradition is limited. Generally speaking, state legislation can have little effect upon the substantive rights of the demanding state, or of the demanded person. Section 5 appears from our present examination to be declaratory. It recognizes the well-established principle that one who, after confinement upon conviction, has broken his parole, should be surrendered; but it also recognizes the other principle that he must have "fled" from the demanding state. The fact that one is a parole violator does not determine that he is a fugitive. Nor does the section make parole violation a ground for extradition except in connection with the prior conviction of crime.

It is our conclusion, therefore, that the writ must be discharged, and the petitioner remanded to the sheriff of

Valencia county for delivery to the agent of the state of California for return to that state pursuant to the warrant of the Governor of this state. It is so ordered.

PARKER, C. J., and BICKLEY, J., concur.