GROGAN, Appellant, v. WELCH, Respondent.

(227 N. W. 74.)

(File No. 6899.   Opinion filed October 15, 1929.)

*Hasche & Foley* and *Matthew J. Schmidt,* all of Watertown, for Appellant.

*Perry F. Loucks,* of Watertown, and *John C. Pollock,* of Fargo, N. D., for Respondent.

CAMPBELL, J.   A complaint was filed against the appellant in a proper court in Cass county in the state of North Dakota charging him with the crime of the larceny of an automobile, alleged to have been committed in said county and state, pursuant to which a warrant was issued for the arrest of appellant.   Appellant being found within the state of South Dakota, the Governor of the state of North Dakota made due demand upon the Governor of the state of South Dakota for the delivery of the said appellant as a fugitive from the justice of said state.   Thereupon the Governor of South Dakota issued his warrant in due form for the extradition of appellant and his warrant for the arrest of appellant and his delivery to the agent of the state of North Dakota.   All these proceedings were regular in form, and, pursuant to the Governor's warrant, appellant was taken into custody by respondent, the sheriff of Codington county, S. D., for the purpose of safe-keeping and delivery to the agent of North Dakota.   Appellant then secured a writ of habeas corpus from the circuit court of Codington county

to which respondent made due return, and, after hearing thereon, the court entered its order remanding appellant to the custody of respondent as sheriff of Codington county to be forthwith delivered to the agent of the state of North Dakota for return to Cass county, N. D., which order appellant now brings to this court upon appeal.

Appellant makes no claim of any defects or irregularities in form as to the proceedings undertaken for his extradition. He does not question the sufficiency of the complaint to state a criminal offense in North Dakota, and he concedes his presence in the state of North Dakota at the time the crime is charged to have been committed. Appellant maintains, however, that he is not a fugitive from justice within the meaning of article 4, § 2, clause 2, Constitution of the United States, and, as we understand it, bases his contention principally upon the proposition that he left the state of North Dakota at a time when no charge was there pending against him and with the knowledge and consent of the prosecuting authorities of Cass county, N. D., who now seek his return to that county.

The relevant facts, stated as favorably to appellant as the record before us warrants, may be summarized as follows: Appellant is eighteen years of age, and lives in Watertown, S. D. During the summer and fall of 1928 he was employed at Fargo, N. D., where he became acquainted with two young men from that vicinity, one by the name of Moreau and one by the name of Madson. On October 28, 1928, at Fargo in Cass county, N. D., an Essex automobile was stolen from its owner, and appellant, Moreau, and Madson drove this automobile from Fargo to Flint, Mich., where they were subsequently apprehended, extradited, and returned to Cass county, N. D., for trial; all being charged with the larceny of the automobile in question. Upon arraignment in the district court in North Dakota, Moreau entered a plea of guilty, and Madson and appellant entered pleas of not guilty, Madson and appellant claiming, and Moreau admitting, that the entire guilt of the larceny rested upon Moreau, and that Madson and appellant did not participate therein nor have guilty knowledge thereof, but innocently rode in the automobile with Moreau after he had committed the larceny. Thereupon the state's attorney of Cass county, N. D., moved the dismissal of the criminal proceedings against Madson and appellant, and the proceedings were dismissed, and appellant was discharged from custody.

The appellant maintains that, after his discharge had been ordered, and while the formalities necessary for his release from custody were being accomplished, the state's attorney of Cass county inquired of him where he was going when he was released, and appellant replied that he was going to return to his home in Watertown, S. D., to which the state's attorney consented and agreed. The morning of the second day after his release from custody appellant left North Dakota and returned to South Dakota. In the meanwhile, however, and the day after the release of appellant, Moreau was brought before the court for sentence upon his plea of guilty. At that time he repudiated his confession of the previous day in which he had admitted sole responsibility for the larceny, and stated that he, Madson, and appellant were all equally guilty of the larceny, and actively participated therein, and had told their story of the previous day by virtue of an agreement among themselves after their arrest that Moreau should take the entire responsibility, exonerate the others, and receive and serve the sentence imposed, in consideration of which Madson and appellant were to keep him (Moreau) supplied with money and various comforts during the term of his imprisonment. Thereupon the state's attorney immediately swore out a new complaint against Madson and appellant, again charging them with the larceny of the automobile in question, and caused warrants to be issued thereon. Appellant contends that he had no knowledge at the time of leaving North Dakota of the issuance of this second complaint; that the story of Moreau at the time he was brought up for sentence is false; and that the truth was told at the time of the arraignment of himself, Moreau, and Madson, pursuant to which the larceny charge against appellant and Madson was dismissed by the state's attorney, and they were released from custody.

The entire matter of interstate rendition of fugitives from justice is based upon the Constitution of the United States (Constitution U. S. art. 4, § 2, clause 2) and federal statute (Rev. St. §§ 5278, 5279, 18 USCA §§ 662, 663), and the general rule as to who is a fugitive from justice is well stated and supported by numerous citations of authority in a careful case note in 13 A. L. R., page 415 et seq., in the following language:

"The decided weight of authority is to the effect that the mission, motive, or purpose inducing a person accused of being a

fugitive from justice to leave the demanding state is immaterial, and that the courts of an asylum state will not consider such elements in an extradition proceeding, but will be satisfied by a simple showing that, having within the demanding state committed that which by its laws constitutes a crime, when the alleged fugitive is sought to be subjected to its criminal process to answer for his offense, he has voluntarily left its jurisdiction and is found within the asylum state."

It has also been several times stated by the Supreme Court of the United States in substantially similar language, as shown by the following citations:

"To be a fugitive from justice, in the sense of the act of Congress regulating the subject under consideration, it is not necessary that the party charged should have left the state in which the crime is alleged to have been committed, after an indictment found, or for the purpose of avoiding a prosecution anticipated or begun, but simply that, having within a state committed that which by its laws constitutes a crime, when he is sought to be subjected to its criminal process to answer for his offense, he has left its jurisdiction, and is found within the territory of another." Roberts v. Reilly, 116 U. S. 80, 6 S. Ct. 291, 300, 29 L. Ed. 544.

"So that the simple inquiry must be whether the person whose surrender is demanded is in fact a fugitive from justice, not whether he consciously fled from justice in order to avoid prosecution for the crime with which he is charged by the demanding state. A person charged by indictment or by affidavit before a magistrate with the commission within a state of a crime covered by its laws, and who, after the date of the commission of such crime, leaves the state—no matter for what purpose or with what motive, nor under what belief—becomes, from the time of such leaving, and within the meaning of the Constitution and the laws of the United States, a fugitive from justice, and if found in another state must be delivered up by the Governor of such state to the state whose laws are alleged to have been violated, on the production of such indictment or affidavit, certified as authentic by the Governor of the state from which the accused departed. Such is the command of the supreme law of the land, which may not be disregarded by any state. The constitutional provision relating to fugitives from justice, as the history of its adoption will show, is in the nature of a

treaty stipulation entered into for the purpose of securing a prompt and efficient administration of the criminal laws of the several states —an object of the first concern to the people of the entire country, and which each state is bound, in fidelity to the Constitution, to recognize. A faithful, vigorous enforcement of that stipulation is vital to the harmony and welfare of the states. And while a state should take care, within the limits of the law, that the rights of its people are protected against illegal action, the judicial authorities of the Union should equally take care that the provisions of the Constitution be not so narrowly interpreted as to enable offenders against the laws of a state to find a permanent asylum in the territory of another state." Appleyard v. Massachusetts, 203 U. S. 222, 27 S. Ct. 122, 123, 51 L. Ed. 161, 7 Ann. Cas. 1073.

"If the conspiracy constituted a crime there is no doubt that Thaw is a fugitive from justice. He was a party to the crime in New York, and afterwards left the state. It long has been established that, for purposes of extradition between the states, it does not matter what motive induced the departure. Roberts v. Reilly, 116 U. S. 80, 6 S. Ct. 291, 29 L. Ed. 544; Appleyard v. Massachusetts, 203 U. S. 222, 226, 227, 27 S. Ct. 122, 51 L. Ed. 161-163, 7 Ann. Cas. 1073." Drew v. Thaw, 235 U. S. 432, 35 S. Ct. 137, 138, 59 L. Ed. 302.

As we understand the situation in the present case, appellant does not seriously question the general rule as indicated by the foregoing quotations, but seeks rather to establish a sort of exception to this general rule, applicable to a case where the accused left the demanding state with the knowledge and consent of the complaining parties or prosecuting authorities, and rests his contention chiefly upon the language of this court in the case of In re Tod, 12 S. D. 386, 81 N. W. 637, 640, 47 L. R. A. 566, 76 Am. St. Rep. 617. In that case the state of Nebraska sought the rendition of Tod to answer to the crime of cheating and defrauding, in the state of Nebraska, a certain mining company, and this court used the following language in its decision:

"On the hearing of the habeas corpus proceeding it was clearly shown by the appellant that he came to this state at the request of the said mining company, and in May, 1899, he returned to Nebraska at their request, and had a final settlement with the company, and again returned to this state, upon the special request of

the said company. Certainly under these circumstances the appellant could not be regarded as a fugitive from justice. Leaving that state, and coming to this state upon the request of the party alleged to have been defrauded, remaining here a number of months in its employ, returning to that state for the purpose of a settlement, and again coming back to this state, not only with the knowledge but at the special request of the said company, negatives the alleged fact that he is a fugitive from justice. While it may not be necessary, to make a person a fugitive from justice, that he should leave the state where the offense is alleged to have been committed, with the intention or for the purpose of avoiding a prosecution, still we think it must appear that he left the state without the knowledge or consent, actual or implied, of the parties alleged to have been defrauded. Liberal as the rule laid down by the supreme court of the United States is, in holding parties to be fugitives from justice, the appellant would not come within that rule."

By analogy it is the contention of appellant here that, when the prosecuting authorities of Cass county, N. D., had him in custody in that county under the larceny charge, and voluntarily released him, knowing that he intended immediately upon his release to leave North Dakota and come to South Dakota, and consenting thereto, appellant, upon leaving North Dakota under those circumstances, did not by so leaving "flee from justice" within the meaning of the Federal Constitution, and those same prosecuting authorities cannot thereafter demand his return to the state of North Dakota to face again the same larceny charge.

This contention of appellant is perhaps plausible in view of the above-quoted language from In re Tod, but we think it cannot be maintained. It may be noted in the first place that the instant case is not strictly parallel with In re Tod. There the knowledge and consent relied upon was upon the part of the complainants. Here it is upon the part of the prosecuting authorities. However, if the principle underlying the decision of In re Tod be accepted as sound, it is doubtless true that it ought logically to be extended to the present case.

In the second place the above-quoted holding in the Tod Case is somewhat weakened by the fact that the holding, although specifically made by the language used, was not in fact necessary to the decision of the case. It appears from an examination of the

Tod Case that the complaint, to answer which the return of Tod to Nebraska was sought, was insufficient to state a public offense under the laws of Nebraska. It further appears that the extradition warrant purporting to have been issued by the Governor of South Dakota was not in fact issued or signed by the Governor personally. Upon either of these grounds the result reached in the Tod Case might well have been arrived at without discussion or consideration of the matter involved in the foregoing quotation.

In the third place, so far as we are able to ascertain, the language above quoted from the Tod Case is contrary to the clear weight of authority. It is based upon no precedent, and has been frequently criticized and never followed. State ex rel. Curry v. Wagener, 145 Minn. 377, 177 N. W. 346; Leonard v. Zweifel, 171 Iowa, 522, 151 N. W. 1054; Re Galbreath, 24 N. D. 582, 139 N. W. 1050; Reed v. Carrigan, 190 Ind. 29, 129 N. E. 8, 13 A. L. R. 411, and note at page 415 et seq. See, also, Von Walden v. Geddes, 105 Conn. 374, 135 A. 396; State v. Richter, 37 Minn. 436, 35 N. W. 9; Re Henke, 172 Wis. 36, 177 N. W. 880, 13 A. L. R. 409. We are well convinced that upon this particular point the Tod Case lacks support in the authorities, is unsound upon principle, and ought now to be overruled.

█ We may make a further observation, however, in this connection. The matter of interstate rendition being federal in its nature, the decisions of the Supreme Court of the United States with reference thereto, as with reference to other federal matters, are binding upon this court.

"The indictment charges a public offense within the statute of the state of Ohio. The regularity of the proceedings had [in that state] before the extradition is not reviewable by us in this proceeding. Upon the proposition as to whether or not the petitioner is a fugitive from justice, within the meaning of the constitution of the United States, that question seems to be absolutely decided against petitioner's contention by the supreme court of the United States in Roberts v. Reilly, 116 U. S. 80, 6 S. Ct. 291, 29 L. Ed. 544, and the decision of that court upon this constitutional question is absolutely binding upon this tribunal. Whether or not the facts in the case of petitioner are such as to call for a modification of the views expressed in Roberts v. Reilly is a question which can only be decided by the federal courts whose writs and processes are open to petitioner." Re Letcher, 145 Cal. 563, 79 P. 65.

See, also, Porter v. Steinmetz, 37 S. D. 488, 159 N. W. 39; Casey v. Butte County, 52 S. D. 334, 217 N. W. 508. And subsequent to the decision in the Tod Case the Supreme Court of the United States has adjudicated the precise point involved in appellant's contention in the instant case, and has determined the same adversely to appellant in the following language:

"* * * Bassing was taken to New York. He was there arraigned and pleaded to the indictment. After one or two continuances the district attorney moved to dismiss the indictment, stating orally, as a reason for his action (so Bassing testified in this case), that he had not sufficient evidence to hold the accused. The motion was sustained and Bassing returned to Rhode Island without, so far as the record shows, any objection on the part of the New York authorities. Shortly thereafter a second indictment was found in the New York court against Bassing for the same offense as that charged in the first indictment, and this was made the basis of a second requisition upon the Governor of Rhode Island on the fourteenth of June, 1907. Upon that requisition the Governor of Rhode Island issued the warrant of arrest of which Bassing complained in his present petition for a writ of habeas corpus.

"The question arises on these facts whether the Governor of Rhode Island was authorized by the Constitution and laws of the United States to issue a second warrant for the arrest of Bassing and his delivery to the agent of New York, such warrant being based upon a second indictment for the same offense as that charged in the former indictment. We have not been referred to, nor are we aware of, any judicial decision covering this precise question. If the proceedings in the New York court, after the appearance there of the accused under the first requisition by the Governor of that state, had so far progressed, before the dismissal of the first indictment, as to put him in legal jeopardy of his liberty, it might be—but upon that point we forbear any expression of opinion—that the Governor of Rhode Island could rightfully have declined to honor a requisition to meet a second indictment for the same offense. But no such case is presented. The accused had not been put in jeopardy when the first indictment was dismissed. It may have been that the dismissal was because the state was without sufficient evidence at the time to hold the defendant; or there may have been other and adequate reasons for the course taken by the

state's attorney. His mere arraignment and pleading to the indictment did not put him in judicial jeopardy. 1 Wharton's American Cr. Law (6th Ed.), 1868, §§ 544, 590, and authorities cited under each section. Suffice it to say that when the second warrant of arrest was issued by the Governor of Rhode Island the accused had not been tried, nor put on final trial, in New York, nor placed in jeopardy there for the offense with which he was charged in that state. We do not, therefore, perceive any reason, based on the Constitution and laws of the United States, why the Governor of Rhode Island could not honor, as he did, the second requisition of the Governor of New York, and issue thereon a second warrant of arrest. It is certain that no right secured to the alleged fugitive by the Constitution or laws of the United States was thereby violated.

"The plaintiff in error insists as one of the grounds of his discharge, that he was not a fugitive from justice. Undoubtedly it was competent for him to show that he was not a fugitive, but he did not establish that fact by evidence. The warrant of arrest issued by the Governor of Rhode Island established prima facie the lawfulness of his arrest, and, nothing to the contrary appearing in proof, it was to be taken by the court which heard this case that the accused was a fugitive from the justice of the state in which he stood charged by indictment with crime. So far as the record shows it did not appear by proof that the accused was not in New York at the time the crime with which he was charged was committed. If he was in New York at that time (and it must be assumed upon the record that he was) and thereafter left New York, no matter for what reason or under what belief, he was a fugitive from the justice of that state within the meaning of the Constitution and laws of the United States. These views are in accord with the adjudged cases. Appleyard v. Massachusetts, 203 U. S. 222, 27 S. Ct. 122, 51 L. Ed. 161, 7 Ann. Cas. 1073, and authorities cited; Illinois ex rel. McNichols v. Pease, 207 U. S. 100, 28 S. Ct. 58 [52 L. Ed. 121], and authorities cited. He was none the less such a fugitive, within the meaning of the Constitution and laws of the United States, because, after the dismissal of the first indictment, he left New York and returned to Rhode Island with the knowledge of, or without objection by, the New York authorities." Bassing v. Cady, 208 U. S. 386, 28 S. Ct. 392, 393, 52 L. Ed. 540, 13 Ann. Cas. 905.

We are therefore of the opinion, both upon principle and authority, that the language hereinbefore quoted from In re Tod should be, and it is hereby, expressly disapproved and overruled, and that the order appealed from in the instant case should be, and it is hereby, affirmed.

SHERWOOD, P. J., and POLLEY, BURCH, and BROWN, JJ., concur.