## APPLEYARD *v.* MASSACHUSETTS.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.

No. 115.  Submitted November 16, 1906.—Decided December 3, 1906.

The constitutional provision relating to fugitives from justice is in the nature of a treaty stipulation entered into for the purpose of securing a prompt and efficient administration of the criminal laws of the several States and its faithful and vigorous enforcement is vital to their harmony and welfare; and while a State should protect its people against illegal action, Federal courts should be equally careful that the provision be not so narrowly interpreted as to enable those who have offended the laws of one State to find a permanent asylum in another.

A person charged by indictment, or affidavit before a magistrate, within a State with the commission of a crime covered by its laws and who leaves the State, no matter for what purpose nor under what belief, becomes

from the time of such leaving and within the meaning of the Constitution and laws of the United States, a fugitive from justice; and in the absence of preponderating or conceded evidence of absence from the demanding State when the crime was committed it is the duty of the other State to surrender the fugitive on the production of the indictment or affidavit properly authenticated.

Although, regularly, one seeking relief by *habeas corpus* in the state courts should prosecute his appeal to, or writ of error from, the highest state court, before invoking the jurisdiction of the Circuit Court on *habeas corpus*, where the case is one of which the public interest demands a speedy determination, and the ends of justice will be promoted thereby, this court may proceed to final judgment on appeal from the order of the Circuit Court denying the relief.

THE appellant was indicted in the Supreme Court of New York, county of Erie, for the crime of grand larceny, first degree, alleged to have been committed in that county on the eighteenth day of May, 1904.

Upon that indictment a warrant of arrest was issued, but the accused was not arrested, for the reason that he was not found within the State.

Then the District Attorney of Erie County applied to the Governor of New York for a requisition upon the Governor of Massachusetts for Appleyard as a fugitive from justice. The application was based upon the above indictment and numerous accompanying affidavits, stating, among other things, that the accused was then in Massachusetts. A requisition was accordingly made upon the Governor of that Commonwealth for the apprehension of Appleyard and his delivery to a named agent of New York, who was authorized to receive and convey him to the latter State, to be there dealt with according to law. With that requisition went properly authenticated copies of all the papers which had been submitted to the Governor of New York by the District Attorney of Erie County.

The Governor of Massachusetts received the requisition and pursuant to the statutes of that Commonwealth referred it to the Attorney General for examination and report. Giving the accused full opportunity to be heard and to introduce

evidence, of which he availed himself, that officer examined the case and reported that the requisition was in regular and proper form and that there was no sufficient reason why it should not be honored. The Governor thereupon issued a warrant for the arrest of Appleyard and his delivery to the agent of New York to be taken to that State, the officer who should execute the warrant being required to give the accused such opportunity to sue out a writ of *habeas corpus* as was pre-scribed by the laws of Massachusetts in such cases. Apple-yard having been arrested applied for a writ of *habeas corpus* to the Supreme Judicial Court of Massachusetts. This fact is stated in the return of the officer holding the accused and is not denied. That court, after hearing an argument, denied the application and remanded the petitioner to the custody of the agent of New York to be held in accordance with the war-rant issued by the Governor of Massachusetts.

The accused then applied to the Circuit Court of the United States for a writ of *habeas corpus*, alleging that the warrant of the Governor of Massachusetts and the order for his delivery to the agent of New York were issued without authority of law and contrary to the Constitution and laws as well of the United States as of Massachusetts, and "especially contrary to sec. 2, art. 4, of the Constitution of the United States and of sec. 5278 of the Revised Statutes of the United States, in that your petitioner is not a fugitive from justice." The writ was issued and a return was made of the above facts.

At the hearing in the Circuit Court the accused requested a ruling that on the evidence it did not appear that, within the meaning of the Constitution and laws of the United States, he was a fugitive from justice, and, also, that he should be discharged from custody unless it appeared positively, by a preponderance of proof, that he "consciously fled from jus-tice when he left the State of New York." Those requests were denied. But the court granted a request that the finding by the Governor of Massachusetts as a fact that the accused was a fugitive from justice was not conclusive. The court refused

to find, as facts, that the acts of Appleyard did not constitute a crime under the laws of New York; that no crime was committed by him in that State; and that Appleyard was not in New York on May 18, 1904, the date of the alleged crime. It consequently discharged the writ of *habeas corpus.* From that order the present appeal was prosecuted.

*Mr. Benjamin S. Minor* and *Mr. Fred H. Williams,* for appellant.

*Mr. Dana Malone,* Attorney General of the State of Massachusetts, and *Mr. Frederic B. Greenhalge,* for appellee.

MR. JUSTICE HARLAN, after making the foregoing statement, delivered the opinion of the court.

It can not be said that the appellant has not had ample opportunity to test the question whether his detention was in violation of the Constitution and laws of the United States. He has had three hearings upon that question; first, before the executive authorities of Massachusetts, then before the Supreme Judicial Court of that Commonwealth, and finally before the Circuit Court of the United States. Upon each occasion he insisted that, within the meaning of the Constitution and laws of the United States, he could not be regarded as a fugitive from justice. The decision at each hearing was adverse to that contention and, unless this court reverses the judgment of the Circuit Court, he must stand his trial upon the charge that he committed a crime against the laws of New York. In view of the history of this case from the time of the demand upon the Governor of Massachusetts for the surrender of the appellant, this court should hesitate, by disturbing the ruling below, to further delay the administration by New York of its criminal laws through its own judicial tribunals. Regularly, the accused should have prosecuted a writ of error to the Supreme Judicial Court of Massachus tts before

invoking the jurisdiction of the Circuit Court of the United States upon *habeas corpus*. *Ex parte Royall*, 117 U. S. 241, 251–253; *Markuson* v. *Boucher*, 175 U. S. 184; *Minnesota* v. *Brundage*, 180 U. S. 499, 502; *Reid* v. *Jones*, 187 U. S. 153. But in view of the long time which has elapsed since the Governor of New York made his requisition for the surrender of the accused, and as the case is one which the public interests demand should be speedily determined, we think the ends of justice will be promoted if we proceed to a final judgment on this appeal.

Upon a careful scrutiny of the record we discover no ground for the assertion that the detention of the appellant is in violation of the Constitution or laws of the United States. The crime with which he is charged is alleged in the indictment to have been committed at Buffalo, New York, on May 18, 1904. It is, we think, abundantly established by the evidence that he was personally present in that city on that day and that thereafter he left New York, although there was some evidence to the effect that on the particular day named he was not in the State. In his own affidavit, submitted and accepted as evidence, the accused specified several days when he was in Buffalo, prior to and subsequent to May 18, 1904, but, as stated by the Attorney General of Massachusetts in his report to the Governor of that Commonwealth, there was in that affidavit no statement directly denying that he was in New York at the time and place indicated in the indictment.

But the appellant contended below, as he does here, that he had no *belief* when leaving New York at any time that he had violated its criminal laws, and therefore, within the meaning of the Constitution and laws of the United States, he could not be deemed a fugitive from its justice. This contention cannot be sustained; indeed, it could not be sustained without materially impairing the efficacy of the constitutional and statutory provisions relating to fugitives from justice. An alleged fugitive may believe that he has not committed any crime against the laws of the State in which he is indicted,

and yet, according to the laws of such State, as administered by its judicial tribunals, he may have done so, and his belief, or want of belief, may be without foundation in law. It is the province of the courts of New York to declare what its laws are, and to determine whether particular acts on the part of an alleged offender constitute a crime under such laws. The constitutional provision that a person charged with crime against the laws of a State and who flees from its justice must be delivered up on proper demand, is sufficiently comprehensive to embrace any offense, whatever its nature, which the State, consistently with the Constitution and laws of the United States, may have made a crime against its laws. *Kentucky* v. *Dennison,* 24 How. 66, 69; *Ex parte Reggel,* 114 U. S. 642, 650. So that the simple inquiry must be whether the person whose surrender is demanded is in fact a fugitive from justice, not whether he *consciously* fled from justice in order to avoid prosecution for the crime with which he is charged by the demanding State. A person charged by indictment or by affidavit before a magistrate with the commission within a State of a crime covered by its laws, and who, after the date of the commission of such crime leaves the State—no matter for what purpose or with what motive, nor under what belief—, becomes, from the time of such leaving, and within the meaning of the Constitution and the laws of the United States, a fugitive from justice, and if found in another State must be delivered up by the Governor of such State to the State whose laws are alleged to have been violated, on the production of such indictment or affidavit, certified as authentic by the Governor of the State from which the accused departed. Such is the command of the supreme law of the land, which may not be disregarded by any State. The constitutional provision relating to fugitives from justice, as the history of its adoption will show, is in the nature of a treaty stipulation entered into for the purpose of securing a prompt and efficient administration of the criminal laws of the several States— an object of the first concern to the people of the entire country,

and which each State is bound, in fidelity to the Constitution, to recognize. ' A faithful, vigorous enforcement of that stipulation is vital to the harmony and welfare of the States. And while a State should take care, within the limits of the law, that the rights of its people are protected against illegal action, the judicial authorities of the Union should equally take care that the provisions of the Constitution be not so narrowly interpreted as to enable offenders against the laws of a State to find a permanent asylum in the territory of another State.

In *Roberts* v. *Reilly*, 116 U. S. 80, 95, 97, this court said that the act of Congress, sec. 5278 of the Revised Statutes, made it the duty of the executive authority of the State in which is found a person charged with crime against the laws of another State, and who has fled from its justice "to cause the arrest of the alleged fugitive from justice, whenever the executive authority of any State demands such person as a fugitive from justice, and produces a copy of an indictment found, or affidavit made, before a magistrate of any State, charging the person demanded with having committed a crime therein, certified as authentic by the Governor or Chief Magistrate of the State from whence the person so charged has fled. It must appear, therefore, to the Governor of the State to whom such a demand is presented, before he can lawfully comply with it, first, that the person demanded is substantially charged with a crime against the laws of the State from whose justice he is alleged to have fled, by an indictment or an affidavit, certified as authentic by the Governor of the State making the demand; and, second, that the person demanded is a fugitive from the justice of the State the executive authority of which makes the demand. The first of these prerequisites is a question of law, and is always open upon the face of the papers to judicial inquiry, on an application for a discharge under a writ of *habeas corpus*. The second is a question of fact, which the Governor of the State upon whom the demand is made must decide, upon such evidence as he may deem satisfactory. How far his decision may be

reviewed judicially in proceedings in *habeas corpus*, or whether it is not conclusive, are questions not settled by harmonious judicial decisions, nor by any authoritative judgment of this court. It is conceded that the determination of the fact by the executive of the State in issuing his warrant of arrest, upon a demand made on that ground, whether the writ contains a recital of an express finding to that effect or not, must be regarded as sufficient to justify the removal until the presumption in its favor is overthrown by contrary proof. *Ex parte Reggel*, 114 U. S. 642."

Replying to the suggestion, in that case, that the fugitive was not within the demanding State subsequent to the finding of the indictment, the court further said: "The appellant in his affidavit does not deny that he was in the State of New York about the date of the day laid in the indictment when the offense is alleged to have been committed, and states, by way of inference only, that he was not in that State on that very day; and the fact that he has not been within the State since the finding of the indictment is irrelevant and immaterial. To be a fugitive from justice, in the sense of the act of Congress regulating the subject under consideration, it is not necessary that the party charged should have left the State in which the crime is alleged to have been committed, after an indictment found, or for the purpose of avoiding a prosecution anticipated or begun, but simply that having within a State committed that which by its laws constitutes a crime, when he is sought to be subjected to its criminal process to answer for his offense, he has left its jurisdiction and is found within the territory of another." To the same effect are *Ex parte Brown*, 28 Fed. Rep. 653; 655; *In re White*, 55 Fed. Rep. 54, 57; *In re Bloch*, 87 Fed. Rep. 981, 983. It is suggested that *Roberts* v. *Reilly* was substantially modified in *Streep* v. *United States*, 160 U. S. 128, 134, in which the court had occasion to construe sec. 1045 of the Revised Statutes. But this is an error. Interpreting the words "fleeing from justice" as found in that section, the court expressly held that these words must receive

the same construction as was given in *Roberts* v. *Reilly* to like words in sec. 5278 of the Revised Statutes, the inquiry in that case being whether the accused was a fugitive from justice.

In support of his contention, the appellant refers to *Hyatt* v. *Corkran*, 188 U. S. 691. That was the case of an arrest in New York, under the warrant of the Governor of that State, of an alleged fugitive from the justice of Tennessee, in which State he stood charged by indictment with crime committed in that State. This court said (p. 719) that as the alleged fugitive "showed without contradiction and upon conceded facts that he was not within the State of Tennessee at the times stated in the indictment found in the Tennessee court, nor at any time when the acts were, if ever committed, he was not a fugitive from justice within the meaning of the Federal statute upon that subject, and upon these facts the warrant of the Governor of the State of New York was improperly issued, and the judgment of the Court of Appeals of the State of New York, discharging the relator from imprisonment by reason of such warrant must be affirmed." The present case is a wholly different one; for here the presumption arising from the recitals in the warrant of arrest in favor of its validity was not overthrown by the proof; on the contrary, it appeared, by a preponderance of evidence, that the accused was in the State of New York when the alleged crime was committed.

Similar views to those expressed in *Roberts* v. *Reilly* have been expressed by state courts. In *Kingsbury's case*, 106 Massachusetts, 223, 227, 228, the contention of the fugitive from justice was that, as she went into the demanding State and returned to her home in the other State before the alleged crime was known, she could not be deemed to have fled from justice. But the court said: "The material facts are, that the prisoner is charged with a crime in the manner prescribed, and has gone beyond the jurisdiction of the State, so that there has been no reasonable opportunity to prosecute her after the facts were known. The fact in this case, that she returned to her permanent home, cannot be material. . . . It is sufficient

that the crime of larceny has been properly charged, and that the prisoner is a fugitive, and a requisition has been properly made." In *State* v. *Richter*, 37 Minnesota, 436, 438, the contention was that to constitute a fugitive from justice a person must have left the State where the crime was committed for the purpose of escaping the legal consequences of his crime. Referring to *Roberts* v. *Reilly*, above cited, as authoritative and binding, and as in accordance with its own views, the Supreme Court of Minnesota well said: "The sole purpose of this statute, and of the constitutional provision which it was designed to carry into effect, was to secure the return of persons who had committed crime within one State, and had left it before answering the demands of justice. The important thing is not their purpose in leaving, but the fact that they had left, and hence were beyond the reach of the process of the State where the crime was committed. Whether the motive for leaving was to escape prosecution or something else, their return to answer the charges against them is equally within the spirit and purpose of the statute; and the simple fact that they are not within the State to answer its criminal process, when required, renders them, in legal intendment, fugitives from justice, regardless of their purpose in leaving." In *Voorhees case*, 32 N. J. L. 141, 150, the court said: "A person who commits a crime within a State, and withdraws himself from such jurisdiction without waiting to abide the consequences of such act, must be regarded as a fugitive from the justice of the State whose laws he has infringed. Any other construction would not only be inconsistent with good sense, and with the obvious import of the word to be interpreted in the context in which it stands, but would likewise destroy, for most practical purposes, the efficacy of the entire constitutional provision." In *Ex parte Swearingen*, 13 S. Car. 74, 80, the court held that the terms fugitive from justice "were intended to embrace not only a case where a party after committing a crime actually *flees*, in the literal sense of that term, from the State where such crime was committed, but also a case where

a citizen of one State, who, within the territorial limits of another State, commits a crime, and then simply returns to his own home. The object of the Constitution was to enable a State whose laws had been violated, to secure the arrest of the person charged with such violation, even though such person might be beyond the reach of the ordinary process of such State." In *Mohr's case,* 73 Alabama, 503, 512, the court, referring to the words in the Constitution, "who shall flee from justice and be found in another State," said: "There is a difference of opinion as to what must be the exact nature of this flight on the part of the criminal, but the better view, perhaps, is that any person is a fugitive within the purview of the Constitution, 'who goes into a State, commits a crime, and then *returns* home.'" In *Hibler* v. *State,* 43 Texas, 197, 201, the court said: "The words 'fugitive from justice,' as used in this connection, must not be understood in a literal sense, but in reference to the subject-matter, considering the general object of the Constitution and laws of the United States in relation thereto. A person who commits a crime in one State for which he is indicted, and departs therefrom and is found in another State, may well be regarded as a fugitive from justice in the sense in which it is here used."

Referring to the opinion in *Pettibone* v. *Nichols,* just decided, for a further discussion of the general subject, and perceiving no error in the action of the Circuit Court, its final order is

*Affirmed.*