(No. 20288.—

THE PEOPLE *ex rel.* Floyd Leach, Appellee, *vs.* HARRY H. BALDWIN, Sheriff, Appellant.

*Opinion filed December 18, 1930.*

WILLIAM D. KNIGHT, State's Attorney, BURON FITTS, KARL C. WILLIAMS, and ALFRED B. LOUISON, for appellant.

EARLY & EARLY, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

This cause is here on appeal to review the order of the circuit court of Winnebago county discharging appellee, Floyd D. Leach, from the custody of appellant, sheriff of that county, in a *habeas corpus* proceeding instituted under section 2 of the act known as the Fugitives from Justice act, as that section was amended in 1929. Leach was taken into custody by appellant, on a warrant of the Governor of this State issued in an extradition proceeding, on demand of the Governor of the State of California that Leach be arrested and delivered to the representative of that State as a fugitive from the justice of that State. He was produced by the sheriff before the circuit court on November 20, 1929. He filed an affidavit as provided under said section 2 and a writ of *habeas corpus* was issued. The cause was continued from time to time, and during the January, 1930, term a hearing was had.

The proceedings in the circuit court were had under the statute relating to fugitives from justice. (Cahill's Stat. 1929, chap. 60, secs. 1, 2; Laws of 1929, p. 487.) Section 1 of that act requires that whenever the executive of another State or Territory of the United States shall demand of the executive of this State any person as a fugitive from justice and shall have complied with the act of Congress pertaining thereto, it shall be the duty of the executive of this State to issue his warrant directed to any sheriff, coroner or constable of any county of the State, or other fit person, directing the arrest and surrender of the alleged fugitive. Section 2, as amended in 1929, is as follows:

"Any such officer or person may, at the expense of the agent making the demand, execute such warrant anywhere within the limits of this State, and require aid as in criminal cases, and may convey such fugitive to any place within this State which the executive in his said warrant shall direct; and deliver such fugitive to such agent. *Provided, however,* that any person so apprehended shall not be delivered into the custody of such agent of the demanding State without first being produced in the circuit court of the county wherein he is arrested or if arrested in the county of Cook, in the criminal court of Cook county. The judge of the court in which such person is produced shall, in open court, either in term time or in vacation inform the person apprehended of the cause of his arrest, the nature of the process and inform him that if he claims (1) that the requisition and papers are not in regular and legal form, (2) that he is not the particular person named in the requisition, indictment or affidavit or in the warrant issued by the Governor, (3) that he is not substantially charged with a crime against the laws of the demanding State, (4) that he is not a fugitive from the justice of the demanding State, *i. e.,* that he was not physically present in the demanding State on or about the date upon which the offense with which he is charged is alleged to have been committed, and

/or (5) that the requisition is not made in good faith but is for some ulterior purpose other than the punishment for crime, he may have a writ of *habeas corpus* upon filing an affidavit to that effect and is entitled to reasonable delay to obtain counsel and avail himself of the laws of this State for the security of personal liberty. * * * Either party may appeal to, or if the proceedings were had in term may have a writ of error from the Supreme Court to review the judgment or order of the circuit or criminal court, as the case may be."

The charge made against Leach is that he on the first of March, 1928, and for five months theretofore, failed and omitted to provide for his minor children of the ages of thirteen and sixteen years, contrary to the laws of the State of California as that offense is set out in section 270 of the Penal Code of that State. To the writ of *habeas corpus* the appellant, as sheriff, made return showing that he was holding Leach in custody by reason of a warrant issued by the Governor of this State. A copy of the warrant was attached to the return. The court heard evidence, including that of Leach, who testified that a decree for separate maintenance had been procured by his wife in California requiring him to pay for her support and for the support of their children. He further testified concerning his acts in California and in this State. His testimony included statements as to payments of small sums which he had sent to his wife. This evidence was admitted over the objection of counsel for appellant, who argued that it was immaterial in a proceeding of this character. Leach admitted that he was in the State of California on March 1, 1928, and that he thereafter left the State.

The court entered an order finding that the papers connected with the requisition were not in due and regular form; that Leach was not substantially charged with crime against the laws of the State of California; that he is not a fugitive from the justice of that State; that the requi-

sition was not sought in good faith but made for some ulterior purpose other than the punishment of crime and for the purpose of spite and ill-will in an attempt to enforce the terms of a separate maintenance decree. The court further found that Leach had to the best of his ability conformed to the decree for separate ·maintenance and supported his wife as best he could; that there had been a previous application for warrant against the petitioner which had been denied by the executive, and that no facts or circumstances had intervened to justify a rehearing.

It seems proper, in view of what took place in the circuit court, to consider the scope of such proceedings and power of the courts of this State concerning same. The right of the chief executive of one State to make requisition upon the executive of another State for the surrender of one charged with crime in the demanding State who is alleged to be a fugitive from justice, is found in the peremptory requirements of the second paragraph of section 2, article 4, of the constitution of the United States. That section is as follows: "A person charged in any State with treason, felony, or other crime, who shall flee from justice, and be found in another State, shall, on demand of the executive authority of the State from which he fled, be delivered up, to be removed to the State having jurisdiction of the crime." Pursuant to this provision of the constitution Congress passed an act (U. S. Rev. Stat. 873, 874,) providing that "whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the Governor or chief magistrate of any State or Territory from whence the person so charged has fled, it shall be the duty of the executive authority of the State

or Territory to which such person has fled to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within six months from the time of the arrest, the prisoner may be discharged. All costs or expenses incurred in the apprehending, securing and transmitting such fugitive to the State or Territory making such demand, shall be paid by such State or Territory."

The construction of that provision of the constitution has frequently been before the Supreme Court of the United States, whose rulings as to such construction are binding on all the courts of the Union, whether State or Federal. In *Roberts* v. *Reilly,* 116 U. S. 80, it was held that the statute passed in pursuance of the provisions of the Federal constitution made it the duty of the executive authority of the State in which is found a person charged with crime against the laws of another State and who has fled from its justice, to cause the arrest of the alleged fugitive from justice whenever the executive authority of any State demands such person as a fugitive from justice and produces a copy of an indictment found or affidavit made before a magistrate of any State charging the person demanded with having committed a crime therein, which proceedings are certified as authentic by the Governor or chief magistrate of the State from whence the person so charged has fled. It was likewise held in that case that the executive is required to consider two questions: First, whether the person demanded is substantially charged with a crime against the laws of the State from whose justice he is alleged to have fled; and second, whether that person is a fugitive from the justice of such State. The first of these questions is held to be a question of law, which is to be determined by an examination of the papers in the proceeding.

The second is a question of fact, which the Governor of the State upon whom the demand is made must decide upon such evidence as he may deem satisfactory.

What constitutes one a fugitive from justice has also been frequently considered. In *Appleyard* v. *Massachusetts,* 203 U. S. 222, and in *Biddinger* v. *Commissioners of Police,* 245 id. 128, it was held that "a person charged by indictment or by affidavit before a magistrate with the commission within a State of a crime covered by its laws, and who after the date of the commission of such crime leaves the State, no matter for what purpose or with what motive or under what belief, becomes from the time of such leaving, and within the meaning of the constitution and the laws of the United States, a fugitive from justice, and if found in another State must be delivered up by the Governor of such State to the State whose laws are alleged to have been violated, on the production of such indictment or affidavit, certified as authentic by the Governor of the State from which the accused departed. Such is the command of the supreme law of the land, which may not be disregarded by any State." In *Drew* v. *Thaw,* 235 U. S. 429, the court, in construing this provision of the constitution, held that in extradition proceedings, where the same are reviewed by *habeas corpus,* the purpose of the writ is not to substitute the judgment of a tribunal of another State for that of the State in which the crime is alleged to have been committed, on the facts or law of the matter, and that defenses to the charge of crime may not be considered on *habeas corpus.* In *Munsey* v. *Claugh,* 196 U. S. 364, it was held that the technical sufficiency of the indictment against the alleged fugitive from justice is not open for consideration on a *habeas corpus* proceeding. In *Biddinger* v. *Commissioners of Police, supra,* it was held the Statute of Limitations concerning the crime charged, as such statute exists in the State in which the crime is alleged to have been committed, is a matter of defense and may not be asserted on

*habeas corpus* but must be asserted on the trial of the defendant in the criminal case. It was there pointed out that the proceeding is a summary one, to be kept within narrow bounds for the protection of the liberty of the citizen as well as in the public interest, and that when the extradition papers required by the statute are in proper form, the only evidence sanctioned by the United States Supreme Court as admissible on such a hearing is such as tends to prove that the accused was not in the demanding State at the time the crime is alleged to have been committed and is thus not a fugitive from justice. The decisions of that court have repeatedly set out that defenses to the charge can not be entertained but must be referred for investigation to the trial of the case in the courts of the demanding State.

Under section 2, chapter 60, hereinbefore quoted, the purpose of the issuance of a writ of *habeas corpus* is to afford to the one whose surrender is demanded the benefit of the laws of this State for the security of personal liberty. The rights of personal liberty which such alleged fugitive has under the constitution of the United States in such a proceeding are the right to require that he be substantially and in good faith charged with an offense against the laws of the demanding State, that the demand be made in due form, as required by law, and that he be given the opportunity to show that he was not, in fact, in the demanding State at the time of the alleged commission of crime and hence is not, in fact, a fugitive from justice. Beyond these he has no rights of personal liberty affected by the matter, and the validity of provisions of a statute extending his rights might well be doubted. It has been argued in some of the cases in the books that in neither the constitution of the United States nor the act of Congress is a penalty imposed for failure to carry out the provisions thereof, and that therefore the provisions of both the constitution and the act of Congress are but directory. We know of no persuasive authority supporting such a view, and certainly there

is nothing in the plain mandate of the constitution which would justify such a construction. It may well have been in the minds of its framers that neither the chief executive nor the courts of any State or Territory would require a penalty for breach of their constitutional duty to induce them to perform that duty. It is evident from the history of the adoption of this constitutional provision that it was adopted for the purpose of securing prompt and efficient administration of the criminal laws of the various States. Its ratification by the various States gives to it a character not unlike a treaty with a foreign State, though the reasons for its faithful and vigorous enforcement are even more impressive, since the trial of the one charged with crime will be under the laws of a sister State of the Union. It is an object of prime importance to the people of the entire country that all proper assistance be given by one State to another in the matter of the enforcement of the laws of the latter. While it is the duty of a State to see that the rights of its citizens are protected against illegal action arising in another State, it is of equal importance to the entire people that the courts of a State avoid in extradition proceedings a view of their duties in that behalf so narrow as to afford within its borders permanent asylum to offenders against the laws of another State. The duty resting on the State and its courts to honor the legal requisitions of another State is found in the supreme law of the land and should be faithfully discharged. *Appleyard* v. *Massachusetts, supra.*

Section 2 of the Fugitives from Justice act, as amended in 1929, seems to supersede the requirements of the provision of the Habeas Corpus act as to the form of petition required and to direct the circuit court to issue the writ of *habeas corpus* when the petitioner shall have filed an affidavit in accordance with the provisions of said section.

The grounds on which Leach sought discharge under writ of *habeas corpus,* and on all of which the circuit court

discharged him, were all those set up in the statute, and he argues here that the requisition papers were not in due form. The only reason assigned is that there was no showing of a change of circumstances between the time when a hearing was had before the executive of this State on a previous demand for extradition, not honored, and the one involved here. He cites in support of this contention the regulations of the State of California pertaining to a second application for extradition, by which it is made necessary that such change of circumstances shall be shown. That matter is one for the consideration of the chief executive of California and not one with which the Governor or the courts of this State have anything to do. The requisition papers in this case were in due form.

It is also argued that the petitioner was not substantially charged with crime in California, and the circuit court so held. The provisions of the Penal Code of California, under which this charge is made, are, in substance, that a father of a minor child who willfully omits, without lawful excuse, to furnish necessary food, clothing, shelter or medical attendance for his child is guilty of a misdemeanor and punishable by imprisonment in the county jail not exceeding two years or by a fine not exceeding $1000, or by both. The direct charge in this case is that Leach violated this code. It is also there provided that the statute should not be so construed as to relieve such father from criminal liability because the mother or other persons or organizations are voluntarily caring for his children. It also provides that proof of abandonment or desertion of a child by such father or his omission to furnish such necessary care is to be taken as *prima facie* evidence that such desertion or failure to furnish care is willful and without lawful excuse. It is also there provided: "The provisions of this section are applicable whether the parents of such child are married or divorced and regardless of any decree made in any divorce action relative to alimony or to the support of the

wife." Counsel for Leach argue that since the code says nothing about a separate maintenance decree for support of the wife and children, and since such decree was entered against Leach, the offense charged against him is not an offense under the Penal Code of California and he for that reason is not substantially charged with crime in that State. This position is wholly untenable. The description of the crime in that State is clear and unambiguous and the charge is likewise clear. Whether Leach is guilty of the offense charged is a matter of defense with which neither the Governor nor the courts of this State have anything to do. Evidence of a decree as to separate maintenance or that Leach had sent money to his wife was not material or competent on the question whether he was substantially charged with crime. Such are matters of defense to the charge to be tried in the demanding State and the courts of this State have nothing to do with that issue. *People* v. *Traeger,* 340 Ill. 147.

It is argued, and the circuit court found, that appellee was not a fugitive from justice, though he himself admits that he was in California on March 1, 1928, the date fixed in the charge against him, and that on April 18 following he left the State. His reasons for leaving are immaterial. (*Appleyard* v. *Massachusetts, supra; Biddinger* v. *Commissioners of Police, supra.*) This contention is utterly without merit.

Appellee further argues that the Statute of Limitations of California had run against the offense charged against him; that under the laws of that State the limitation as to such an offense is one year, and that the complaint in this case was made more than one year after March 1, 1928. Though appellant shows that under the laws of the State of California time during which the accused is out of the State is not to be considered in determining the matter of limitation, yet, as we have seen, the operation of the Statute of Limitations is a matter of defense to be heard on the

trial of the cause and not one competent to be considered in a proceeding of this character.

It is also claimed, and the circuit court held, that the charge made against Leach was not made in good faith but for some ulterior purpose other than for punishment of crime, and in this connection it is argued that Leach had sent to his wife some small checks, amounting to approximately $55, from the time he left until the time the charge was made, which checks had not been cashed, and that this shows animus on the part of his wife as instigator of these proceedings. It is said that this evidence shows an attempt to have Leach returned to California to enforce a separate maintenance decree and not for prosecution of this charge. Regardless of the suggestion that good faith is a matter into which the courts of this State may not go, which we do not decide, this record is barren of evidence indicating animus on the part of Leach's wife. It, in fact, shows that her sister, Henrietta Zeiss, swore to the complaints on which warrants have been issued in attempts to secure Leach's return to the State of California. The affidavit of Henrietta Zeiss, and that of Leach's wife, filed in the extradition proceedings, as well as the certificates of the prosecuting attorney of Los Angeles county, declare that the only purpose for which his return to California is sought is that he might be prosecuted under the law for the offense he has committed. There is nothing to show want of good faith.

It is unnecessary to go any further into the record. The order of the circuit court was wholly without basis in law or fact, and the same is reversed and the cause remanded to that court, with directions to order the surrender of Leach to the representative of the State of California in accordance with the warrant of the Governor of this State.

*Reversed and remanded, with directions.*