[No. 25864. Department One. April 16, 1936.]

*In the Matter of the Petition of* EDWARD S. ROBERTS *for a Writ of Habeas Corpus.*[1]

*Adam Beeler, Donald A. McDonald,* and *Edwards Merges,* for appellant.

*Warren G. Magnuson* and *John Alden Ryan,* for respondent.

[1]Reported in 56 P. (2d) 703.

STEINERT, J.—This is an appeal from a final order of the superior court denying petitioner's application for a writ of habeas corpus and remanding petitioner to the custody of the sheriff to await the determination of pending interstate rendition proceedings.

On February 11, 1935, the Grand Inquest for the Commonwealth of Massachusetts, sitting at Boston, presented a bill of indictment charging the petitioner, Edward S. Roberts, with the crime of larceny of the sum of five thousand dollars in that state, on February 9, 1934.

The governor of Massachusetts issued a requisition upon the governor of Washington, demanding that petitioner be arrested and delivered to the duly authorized and designated agent of the state of Massachusetts, for return to the latter state. The demand was accompanied by affidavits, complaint, information, indictment, and warrant charging petitioner with the alleged crime and with being a fugitive from the justice of the state of Massachusetts, taking refuge in the state of Washington.

Prior to the formal requisition made by the governor of Massachusetts, petitioner had been arrested in this state, under a fugitive warrant issued by a justice of the peace in Seattle, but had been released on bail. After the issuance of the requisition, and after a hearing thereon before the governor of Washington, a warrant of rendition was signed by the chief executive of this state, and the petitioner was thereupon surrendered by his bondsman into the custody of the King county sheriff. Application for a writ of habeas corpus was then made to the superior court to inquire into the cause of petitioner's imprisonment and restraint. After a hearing, at which considerable evidence was taken, the superior court refused to issue the writ. This appeal followed.

The appellant petitioner makes two contentions: (1) That the appellant was not shown to have fled from the demanding state; and (2) that the evidence shows that the appellant left the demanding state with the knowledge and implied consent of the prosecuting witness.

We think it but fair to say that, upon the face of the record, the circumstances under which the appellant came to the state of Washington do not show beyond question that his purpose in so doing was to evade prosecution. Close family ties, the condition of his health, and business prospects seem to have furnished the motive, according to the evidence of appellant. From a layman's point of view, at any rate, we could quite readily accept that explanation. But the question before us involves a subject of the law which is very restrictive in its sense and meaning.

Interstate rendition is a proceeding resting on Federal, not on state, law. The authority, power, and duty of the state in such matters is contained in Art. IV, § 2 of the United States constitution, which provides:

"A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall, on demand of the executive authority of the state from which he fled, be delivered up to be removed to the state having jurisdiction of the crime."

Sections 5278 and 5279 of the Revised Statutes of the United States (Title 18, U. S. C. A., §§ 662, 663) prescribe the procedure in such matters. Those sections read as follows:

"Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a

magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, it shall be the duty of the executive authority of the State or Territory to which such person has fled to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within six months from the time of the arrest, the prisoner may be discharged. All costs or expenses incurred in the apprehending, securing, and transmitting such fugitive to the State or Territory making such demand, shall be paid by such State or Territory.'' U. S. Rev. Stat., § 5278 (Title 18, U. S. C. A., § 662).

''Any agent so appointed who receives the fugitive into his custody shall be empowered to transport him to the State or Territory from which he has fled. And every person who, by force, sets at liberty or rescues the fugitive from such agent while so transporting him, shall be fined not more than five hundred dollars or imprisoned not more than one year.'' U. S. Rev. Stat., § 5279 (Title 18, U. S. C. A., § 663).

These sections were amended in some slight particulars, not material here, by act of Congress on March 22, 1934. Chapter 73, § 2, 48 Stat. 455 (Title 18, U. S. C. A. § 662c).

These provisions constitute the law applicable to extradition, or interstate rendition, of fugitives from justice. *In re Foye,* 21 Wash. 250, 57 Pac. 825; *In re Baker,* 21 Wash. 259, 57 Pac. 827; *In re Sylvester,* 21 Wash. 263, 57 Pac. 829; *In re Gillis,* 38 Wash. 156, 80 Pac. 300; *Thorp v. Metzger,* 77 Wash. 62, 137 Pac. 330; *United States ex rel. McCline v. Meyering,* 75 F. (2d) (C. C. A.) 716; Scott on Interstate Rendition, p. 43, § 35.

Interstate rendition being a proceeding founded on the Federal constitution and laws, the decisions of the supreme court of the United States govern the construction that must be given to the provisions relating thereto. *South Carolina v. Bailey,* 289 U. S. 412, 420, 53 S. Ct. 667, 77 L. Ed. 1292; *In re Henke,* 172 Wis. 36, 177 N. W. 880, 13 A. L. R. 409; *Grogan v. Welch,* 55 S. D. 613, 227 N. W. 74, 67 A. L. R. .1474; *People v. Baldwin,* 341 Ill. 604, 174 N. E. 51; Scott on Interstate Rendition, p. 10, § 8.

Under his first contention, appellant asserts that, to constitute one a fugitive from justice, it must be shown that he left the demanding state with the consciousness of guilt, for the purpose of escaping punishment for his crime. The law is to the contrary. To be a fugitive from justice, in the sense and meaning of the constitution and laws of the United States, it is not necessary that the party charged should have left the state in which the crime is alleged to have been committed, after an indictment found, or for the purpose of avoiding prosecution. If the party charged with the crime was in the place where, and at the time when, the crime was committed, and if thereafter he leaves the state of location, he is a fugitive from justice, within the meaning of the constitution relating to interstate rendition, regardless of his motive or reason for leaving the state.

In *Roberts v. Reilly,* 116 U. S. 80, 6 S. Ct. 291, 29 L. Ed. 544, the court laid down the rule, on page 97, in these words:

"To be a fugitive from justice, in the sense of the act of Congress regulating the subject under consideration, it is not necessary that the party charged should have left the State in which the crime is alleged to have been committed, after an indictment found, or for the purpose of avoiding a prosecution anticipated or begun, but simply that having within a State committed

that which by its laws constitutes a crime, when he is sought to be subjected to its criminal process to answer for his offense, he has left its jurisdiction and is found within the territory of another.''

In *Appleyard v. Massachusetts,* 203 U. S. 222, 27 S. Ct. 122, 51 L. Ed. 161, the contention made here was fully discussed and answered on pages 226, 227, as follows:

''But the appellant contended below, as he does here, that he had no *belief* when leaving New York at any time that he had violated its criminal laws, and therefore, within the meaning of the Constitution and laws of the United States, he could not be deemed a fugitive from its justice. This contention cannot be sustained; indeed, it could not be sustained without materially impairing the efficacy of the constitutional and statutory provisions relating to fugitives from justice. An alleged fugitive may believe that he has not committed any crime against the laws of the State in which he is indicted, and yet, according to the laws of such State, as administered by its judicial tribunals, he may have done so, and his belief, or want of belief, may be without foundation in law. It is the province of the courts of New York to declare what its laws are, and to determine whether particular acts on the part of an alleged offender constitute a crime under such laws. The constitutional provision that a person charged with crime against the laws of a State and who flees from its justice must be delivered up on proper demand, is sufficiently comprehensive to embrace any offense, whatever its nature, which the State, consistently with the Constitution and laws of the United States, may have made a crime against its laws. *Kentucky v. Dennison,* 24 How. 66, 69; *Ex parte Reggel,* 114 U. S. 642, 650. So that the simple inquiry must be whether the person whose surrender is demanded is in fact a fugitive from justice, not whether he *consciously* fled from justice in order to avoid prosecution for the crime with which he is charged by the demanding State. A person charged by indictment or by affidavit before a magistrate with

the commission within a State of a crime covered by its laws, and who, after the date of the commission of such crime leaves the State—no matter for what purpose or with what motive, nor under what belief—becomes, from the time of such leaving, and within the meaning of the Constitution and the laws of the United States, a fugitive from justice, and if found in another State must be delivered up by the Governor of such State to the State whose laws are alleged to have been violated, on the production of such indictment or affidavit, certified as authentic by the Governor of the State from which the accused departed. Such is the command of the supreme law of the land, which may not be disregarded by any State.''

In *Biddinger v. Commissioner of Police,* 245 U. S. 128, 38 S. Ct. 41, 62 L. Ed. 193, the court again answered the contention, in the following language, appearing on page 133:

''Such being the origin and purpose of these provisions of the Constitution and statutes, they have not been construed narrowly and technically by the courts as if they were penal laws, but liberally to effect their important purpose, with the result that one who leaves the demanding State before prosecution is anticipated or begun, or without knowledge on his part that he has violated any law, or who, having committed a crime in one State, returns to his home in another, is nevertheless decided to be a fugitive from justice within their meaning. *Roberts v. Reilly,* 116 U. S. 80; *Appleyard v. Massachusetts,* 203 U. S. 222; *Kingsbury Case,* 106 Massachusetts, 223.

''Courts have been free to give this meaning to the Constitution and statutes because in delivering up an accused person to the authorities of a sister State they are not sending him for trial to an alien jurisdiction, with laws which our standards might condemn, but are simply returning him to be tried, still under the protection of the Federal Constitution but in the manner provided by the State against the laws of which it is charged that he has offended.''

See, also, *People ex rel. McNichols v. Pease,* 207 U. S. 100, 28 S. Ct. 58, 52 L. Ed. 121; *Bassing v. Cady,* 208 U. S. 386, 28 S. Ct. 392, 52 L. Ed. 540; *Drew v. Thaw,* 235 U. S. 432, 35 S. Ct. 137, 59 L. Ed. 302; *Hogan v. O'Neill,* 255 U. S. 52, 41 S. Ct. 222, 65 L. Ed. 497; *Black v. Miller,* 59 F. (2d) 687; 11 R. C. L. 732, § 24.

The reason for this rule is aptly stated in the *Appleyard* case, on pages 227, 228, as follows:

"The constitutional provision relating to fugitives from justice, as the history of its adoption will show, is in the nature of a treaty stipulation entered into for the purpose of securing a prompt and efficient administration of the criminal laws of the several States—an object of the first concern to the people of the entire country, and which each State is bound, in fidelity to the Constitution, to recognize. A faithful, vigorous enforcement of that stipulation is vital to the harmony and welfare of the States. And while a State should take care, within the limits of the law, that the rights of its people are protected against illegal action, the judicial authorities of the Union should equally take care that the provisions of the Constitution be not so narrowly interpreted as to enable offenders against the laws of a State to find a permanent asylum in the territory of another State."

Appellant says in his brief that this court has laid down a contrary rule in *Poor v. Cudihee,* 37 Wash. 609, 79 Pac. 1105. We do not agree with this assertion. In that case, the trial court had found that the petitioner was not a fugitive from justice. No exceptions were taken to the findings of the court. Upon appeal, there was no statement of facts or bill of exceptions. Upon the existing state of the record, this court held that the only question open to review was the sufficiency of the lower court's findings. That has always been the rule in this state. The fact found by the trial court being taken as true, the petitioner

was, of course, entitled to his discharge. That case in no way runs counter to the accepted rule.

■ Appellant's second contention is that, having left the state of Massachusetts with the knowledge and implied consent of the prosecuting witness, he cannot be considered to be a fugitive from justice.

We doubt that the evidence justifies a conclusion of knowledge or consent on the part of the complaining witness, but, assuming that it does, the appellant is still subject to interstate rendition.

The crime charged was an act in violation of the laws of a sovereign state, and the sovereign alone could dispose of the offender. In *Reed v. Carrigan,* 190 Ind. 29, 129 N. E. 8, 13 A. L. R. 411, it is said:

"This answer apparently proceeds on the theory that acts of a witness who gave the testimony on which an indictment or affidavit was based can be alleged and proved, as against the State of Michigan, to defeat extradition upon a requisition and warrant issued on such indictment or affidavit, and that whatever would estop the prosecuting witness to assert that the accused is a fugitive from justice will likewise estop the State of Michigan. But a criminal offense is not a mere offense against an individual, subject to be condoned by acts of the injured party, but it is an offense against a sovereign state, and no individual, even though he be the complaining witness, has power or authority to control the action of the sovereign in vindicating its dignity by punishing an infraction of its laws. *Matter of Galbreath* (1913), 24 N. D. 582, 139 N. E. 1050; *Leonard v. Zweifel* (1915), 171 Iowa 522, 151 N. W. 1054."

The case of *Ex parte Pinkus,* 114 Tex. Crim. App. 326, 25 S. W. (2d) 334, announces the same rule.

The only case relied upon, or suggested, by appellant on this point is that of *In re Tod,* 12 S. D. 386, 81 N. W. 637, 47 L. R. A. 566, 76 Am. St. 616. That case, however, has been expressly overruled by the court

of its parentage, upon the particular point, as being unsound in principle. *Grogan v. Welch,* 55 S. D. 613, 227 N. W. 74, 67 A. L. R. 1474.

If a party charged with a crime was in the place where the crime was committed, at the time of its commission, and if thereafter he leaves the state, no matter for what reason or under what belief, and even though his departure was with the knowledge, or without objection on the part, of the state authorities, he is nevertheless a fugitive from justice, within the meaning of the constitution and laws of the United States. *Bassing v. Cady,* 208 U. S. 386, 28 S. Ct. 392, 52 L. Ed. 540. See, also, 25 C. J. 259, § 15.

If knowledge of, or consent by, state officers is ineffectual against subsequent interstate rendition, much less is the knowledge or consent of the complaining witness effectual.

The order of the trial court must be, and it is, affirmed.

MILLARD, C. J., MITCHELL, TOLMAN, and GERAGHTY, JJ., concur.