[No. 27353. Department One. February 20, 1939.]

*In the Matter of the Petition of* ARTHUR ANTHONY *for a Writ of Habeas Corpus.*[1]

*Stuart H. Elliott,* for appellant.

*H. Sylvester Garvin* and *Anthony Savage,* for respondent.

STEINERT, J.—This is an appeal from an order of the superior court discharging a person held in custody by virtue of a warrant of arrest issued in interstate rendition proceedings.

In July, 1927, Arthur Anthony, alias Richard Stafford Bosworth, petitioner herein, was convicted of the

[1]Reported in 87 P. (2d) 302.

crime of forgery in Los Angeles county, California, and was committed to the state prison at Folsom. On June 20, 1932, he was paroled by the board of prison directors of that state. Some time later, he was charged with the commission of an offense in Sonoma county and a warrant for his arrest was issued, but he could not be found at that time. In May, 1933, his parole was revoked for violation of its terms and conditions. On July 22, 1933, he was apprehended by the police in San Francisco and a charge was placed against him.

While in the city jail in San Francisco, petitioner asked that he might confer with a post office inspector, and in a subsequent interview with that official he confessed his complicity in a burglary of a post office in Florin, California, on the night of July 21, 1933. Through some arrangement, the exact details of which are not disclosed, made between the state parole officer and the Federal authorities, petitioner was taken to Sacramento, where he was indicted in the Federal court for burglary of the post office and, upon his plea of guilty, was sentenced to a term of five years in a Federal penitentiary. Upon commitment, he was brought to the state of Washington and imprisoned on September 14, 1933, in the United States penitentiary at McNeil island.

At the expiration of his term on September 10, 1938, he was released from the Federal penitentiary and was immediately taken into custody by a state parole officer of California holding a warrant upon interstate rendition proceedings. Petitioner thereupon applied to the superior court for Pierce county in this state for a writ of *habeas corpus* and, after a hearing, obtained his discharge. The state of California has appealed from the court's order releasing petitioner.

The question presented to us for decision is this: If

a convicted person is taken into custody in another state, after his parole in that state has been revoked, and is thereafter surrendered by the parole officer to Federal authorities to answer for a Federal offense committed in the same state, and upon conviction of such offense is brought to this state for imprisonment in a Federal penitentiary, is such person, upon his release from the Federal penitentiary in this state, subject to extradition as a fugitive from justice of the demanding state, within the meaning of the constitution and laws of the United States?

■ The authority, power, and duty of the several states in matters pertaining to interstate rendition are contained and prescribed in Art. IV, § 2, of the United States constitution, which provides:

"A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall, on demand of the executive authority of the state from which he fled, be delivered up to be removed to the state having jurisdiction of the crime."

Sections 5278 and 5279 of the Revised Statutes of the United States (18 U. S. C. A., §§ 662, 663), and chapter 73, § 2, 48 Stat. 455 (18 U. S. C. A. (Sup.), § 662c) prescribe the procedure to be followed in such cases. Those provisions of the Federal constitution and acts of Congress constitute the law applicable to extradition or interstate rendition of fugitives from justice. *In re Roberts,* 186 Wash. 13, 56 P. (2d) 703.

In the case just cited, wherein the facts, though not identical with, are similar to those in the case at bar, we declared the law of this state upon the subject, in language broad yet specific enough to govern a set of facts such as we have here. We there expressly held that if a party charged with a crime was physically present in the state of location, at the time of the com-

mission of the crime, and if thereafter he left that state, he is a fugitive from justice, within the meaning of the constitution and laws of the United States relating to interstate rendition, regardless of his motive or reason for leaving the state.

The authorities upon which our conclusion was rested, beginning with *Roberts v. Reilly,* 116 U. S. 80, 29 L. Ed. 544, 68 S. Ct. 291, continuing with *Appleyard v. Massachusetts,* 203 U. S. 222, 51 L. Ed. 161, 27 S. Ct. 122, 7 Ann. Cas. 1073, and *Biddinger v. Commissioner of Police,* 245 U. S. 128, 62 L. Ed. 193, 38 S. Ct. 41, and followed by many others, both Federal and state, were cited in the opinion and need not be repeated here. To those, however, may be added *People ex rel. Hutchings v. Mallon,* 218 App. Div. 461, 218 N. Y. Supp. 432 (affirmed without opinion in 245 N. Y. 521, 157 N. E. 842); *Ex parte Williams,* 10 Okla. Crim. 344, 136 Pac. 597, 51 L. R. A. (N. S.) 668; *Ex parte Foster,* 60 Okla. Crim. 50, 61 P. (2d) 37; *Ex parte George,* 73 P. (2d) (Okla.) 471; *Reed v. Colpoys,* 99 F. (2d) 396. Our adherence to the views expressed in the case of *In re Roberts, supra,* is sufficiently indicated by this reference to it.

█ The one distinguishing feature between that case and this is that in the *Roberts* case the petitioner left the demanding state voluntarily, while in this case he was removed by legal compulsion. Upon that distinction, petitioner claims the right to be discharged from custody and relieved from rendition to the state of California. His contention is that, since he did not "flee from the justice" of that state, but was forcibly removed therefrom, he is not within the terms of the constitutional provision. The argument has, at first blush, a degree of plausibility, but mature consideration reveals its lack of merit.

Extradition or rendition laws serve a public purpose that must be recognized. Their primary object is to

prevent the successful escape of any person who has been accused of crime, whether convicted or unconvicted; for it is of vital importance to every state and to society in general that those who commit crimes in one state shall not find permanent asylum in another. The constitutional provision relating to fugitives from justice may be regarded as a solemn compact between the states, a faithful and vigorous observance of which will promote the general welfare and at the same time tend to maintain harmonious relations between the states as parties to the compact. While the rights of the individual are to be protected against illegal action, the rights of the states and of society to protect themselves against criminals are no less sacred or exigent. *Appleyard v. Massachusetts,* 203 U. S. 222, 51 L. Ed. 161, 27 S. Ct. 122, 7 Ann. Cas. 1073; *Drinkall v. Spiegel,* 68 Conn. 441, 36 Atl. 830, 36 L. R. A. 486; *People ex rel. Hutchings v. Mallon,* 218 App. Div. 461, 218 N. Y. Supp. 432 (affirmed without opinion in 245 N. Y. 521, 157 N. E. 842); *People ex rel. MacSherry v. Enright,* 112 Misc. 568, 184 N. Y. Supp. 248; *Ex parte Foster,* 60 Okla. Crim. 50, 61 P. (2d) 37; *Hughes v. Pflanz* (6 C. C. A.), 138 Fed. 980; 2 Story, Constitution (5th ed.), 588, § 1809.

Petitioner's contention is not novel to the courts. The identical question has on a number of occasions been presented and has been definitely and emphatically determined in the following cases: *People ex rel. McFadden v. Meyering,* 358 Ill. 442, 193 N. E. 475; *In re Martin,* 142 Kan. 907, 52 P. (2d) 1196; *State ex rel. Shapiro v. Wall,* 187 Minn. 246, 244 N. W. 811, 85 A. L. R. 114; *In re Cohen,* 104 N. J. Eq. 560, 146 Atl. 423. Each of those cases presented a situation where the petitioner had been forcibly removed from one state to another, and in each instance it was held that, in whatever manner or for whatever reason the party

may have gone into the asylum state, he is regarded in law as a fugitive from the justice of the demanding state. Those cases proceed upon the same reasoning and advance many of the same authorities as those in our own case of *In re Roberts,* 186 Wash. 13, 56 P. (2d) 703, referred to above. See, also, 2 Moore on Extradition 929, § 578.

Petitioner, however, stakes his position, and the trial court rested its decision, wholly upon the case of *In re Whittington,* 34 Cal. App. 344, 167 Pac. 404, decided in 1917. That case, though supporting respondent's contention, has been so often criticized by later cases in other jurisdictions, cited above, that it is now of doubtful value as a precedent. In any event, to the extent that it is now urged upon us, we respectfully decline to follow it. Moreover, the state of California appears to have relieved itself of the controlling effect of that decision, for in 1937 the legislature amended its penal code, § 1549, to provide that the governor may, on demand of the executive authority of any other state, surrender any person charged with crime, even though such person left the demanding state involuntarily. We have no doubt whatever that California would, in a similar case, honor a requisition from this state as readily as it now asks that its requisition be honored by us.

The order discharging the prisoner is reversed, with instructions to deny the prayer of the writ and to remand the prisoner to the custody of the agent of the state of California.

BLAKE, C. J., MAIN, ROBINSON, and JEFFERS, JJ., concur.